**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHASE HAMANO, Individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, SPENCER NEUMANN, and COLLISTER JOHNSON,<br><br>            Defendants. | Case No. 1:19-cv-01741<br>Honorable Jorge L. Alonso<br><br><br>**JURY TRIAL DEMANDED** |

<u>**DEFENDANTS ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, AND COLLISTER JOHNSON'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE**</u>

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 5

II.    BACKGROUND ................................................................................................. 5

    A.    Defendants ................................................................................................ 5

    B.    The California Action .............................................................................. 6

    C.    The New York Action ............................................................................. 6

    D.    The Illinois Action ................................................................................. 7

III.   THIS ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT
     OF CALIFORNIA UNDER 28 U.S.C. § 1404(A). ......................................... 7

    A.    Defendants Do Not Dispute That Venue Is Proper in This District. .................. 8

    B.    Venue is Also Proper in the Central District of California, Where the First-
        Filed Case Is Currently Pending. .................................................................. 8

    C.    The Central District of California is More Convenient for the Parties and
        Witnesses. ................................................................................................. 9

        1.    Plaintiff's Choice of Forum—a District in Which He Does Not
            Reside and Where None of the Relevant Events Occurred—Should
            Be Given Little Weight. .......................................................................... 9

        2.    The Events Underlying This Action Occurred in California. ................. 10

        3.    The Majority of Evidence Is Located on the West Coast. ..................... 10

        4.    Defendants all Reside in California and None of the Parties Reside
            in Illinois. ............................................................................................. 11

        5.    The Majority of Witnesses Reside on the West Coast. ........................... 11

    D.    Transferring This Case to the Central District of California Would
        Advance the Interests of Justice .................................................................. 12

        1.    The Central District of California is Equally Familiar with the
            Applicable Law. .................................................................................... 13

        2.    This Action Should be Transferred to California for Consolidation
            with the First-Filed Action. .................................................................... 13

            a.    The California Action was the First-Filed Suit. ........................... 13

            b.    The Parties Substantially Overlap. .............................................. 14

            c.    The Claims Substantially Overlap. .............................................. 14

            d.    The Available Relief Substantially Overlaps. .............................. 15

        3.    The Relative Docket Congestion and Time to Trial in Each Forum
            Favors Transfer to the Central District of California. ............................. 15

IV.   CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Activision Blizzard, Inc. Securities Litigation*,
Case Pending No. 13 (J.P.M.L.) ...........................................................................7, 14

*Al Labade v. Activision Blizzard, Inc. et al.*,
Case No. 2:19-cv-00423-R-AFM (C.D. Cal.).............................................................6

*Arion, LLC v. LMLC Holdings, Inc.*,
2018 WL 6590533 (N.D. Ill. Dec. 14, 2018) ..........................................................15

*Barela v. Experian Info. Sols., Inc.*,
2005 WL 770629 (N.D. Ill. Apr. 4, 2005) ...............................................................12

*Carter v. Baldwin*,
2017 WL 3310976 (N.D. Ill. Aug. 3, 2017) ...............................................................9

*Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*,
34 F. Supp. 2d 1092 (N.D. Ill. 1999) .......................................................................13

*Fellowes, Inc. v. ACCO Brands Corp.*,
830 F. Supp. 2d 452 (N.D. Ill. 2011) .......................................................................13

*Flava Works, Inc. v. A4A Reseau, Inc.*,
2015 WL 1926280 (N.D. Ill. Apr. 28, 2015) ...........................................................12

*Hartford Cas. Ins. Co. v. Topsail Sportswear, Inc.*,
2010 WL 2757556 (N.D. Ill. July 8, 2010)...............................................................11

*Humphrey v. United Healthcare Servs., Inc.*,
2014 WL 3511498 (N.D. Ill. July 16, 2014)........................................................13, 14

*Kjaer Weis v. Kimsaprincess Inc.*,
296 F. Supp. 3d 926 (N.D. Ill. 2017) ..................................................................10, 11

*Moore v. Motor Coach Indus., Inc.*,
487 F. Supp. 2d 1003 (N.D. Ill. 2007) ...............................................................7, 8, 9

*Plotkin v. IP Axess, Inc.*,
168 F. Supp. 2d 899 (N.D. Ill. 2001) ......................................................9, 10, 12, 13

*Preci-Dip, SA v. Tri-Star Elect. Int'l, Inc.*,
2008 WL 5142401 (N.D. Ill. Dec. 4, 2008)...............................................................14

# TABLE OF AUTHORITIES
## (continued)

**Page**

*RAH Color Techs. LLC v. Adobe Sys., Inc.*,
  2018 WL 2393875 (N.D. Ill. May 28, 2018) ............................................................9

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
  626 F.3d 973 (7th Cir. 2010) .................................................................13

*Schenet v. Anderson*,
  1986 WL 13751 (N.D. Ill. Dec. 1, 1986) .................................................9

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) .................................................................7

*Wedi Corp. v. Seattle Glass Block Window, Inc.*,
  2018 WL 1794771 (N.D. Ill. Apr. 16, 2018) (Alonso, J.) ............................... *passim*

*Winckler v. Activision Blizzard, Inc. et al.*,
  Case No. 1:19-cv-02095-LAP (S.D.N.Y.) .................................................6

*Yi v. Uber Techs., Inc.*,
  2018 WL 5013568 (N.D. Ill. Oct. 15, 2018) .......................................11

**Statutes**

15 U.S.C. §78aa ..................................................................8

28 U.S.C.
  §1391(b) ..................................................................8
  §1404(a) ....................................................... *passim*
  §1406(a) ..................................................................8
  §1407(a) ..................................................................7

## I.   INTRODUCTION

The above-captioned case is a stock-drop lawsuit brought against Activision Blizzard, Inc. ("Activision" or the "Company") and certain of its current and former officers by a purported Activision stockholder, who resides in Hawaii.  Nothing in this case, however, has anything whatsoever to do with Illinois.  None of the complained-of acts occurred here; none of the evidence is located here; and all parties and potential witnesses—even Plaintiff himself—reside *thousands* of miles away.  Indeed, the only connection between this case and the Northern District of Illinois is Plaintiff's decision to file here in a transparent attempt at forum shopping away from a nearly identical, first-filed action in the Central District of California filed nearly two months before this action was filed.

Because the Central District of California is more convenient to the parties and witnesses, and would better serve the interests of justice, Defendants Activision, Robert A. Kotick, and Collister Johnson, respectfully request that the Court transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404(a).[1]

## II.   BACKGROUND

### A.   Defendants

Activision, a Delaware company, with its headquarters and principal executive offices in Santa Monica, California, is a global developer and publisher of interactive entertainment content and services.  (Complaint ("Compl.") ¶ 22; Declaration of Jonathan D. Roux ("Roux Decl.") ¶ 2.) It conducts its business and operations through a network of subsidiaries, including, as relevant here, Activision Publishing, Inc. ("Activision Publishing").  Activision Publishing is a wholly-

---

[1] Counsel for Activision and Messrs. Kotick and Johnson conferred with counsel for Defendant Spencer Neumann regarding the filling of this instant motion, which Mr. Neumann fully supports. (Declaration of Koji F. Fukumura ("Fukumura Decl.") ¶ 2, accompanying this motion.)

owned subsidiary of Activision, incorporated in Delaware, and headquartered in Santa Monica, California. (Roux Decl. ¶ 3.)

Defendants Robert A. Kotick and Collister Johnson are the Company's current Chief Executive Officer and Chief Operating Officer, respectively. (*Id.* ¶¶ 6, 8.) Defendant Spencer Neumann served as Activision's Chief Financial Officer until December 31, 2018. (*Id.* ¶ 7.) Each of the Individual Defendants reside and work in California, as do the Company's employees who are responsible for the Company's public filings and investor communications. (*Id.* ¶ 5.)

### B. The California Action

On January 18, 2019, a putative securities class action complaint was filed in the Central District of California (the "California Action").[2] The complaint alleges Activision and certain of its current and former executives violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") by making allegedly false and/or misleading statements regarding the termination of Activision's agreement with Bungie, Inc. ("Bungie"), to publish and distribute video games developed by Bungie, including the *Destiny* franchise. (California Action Compl. ¶ 36.)

### C. The New York Action

On March 7, 2019, a virtually identical complaint against the same Defendants, and alleging the same causes of action based on the same underlying conduct, was filed in the Southern District of New York (the "New York Action").[3] Defendants are filing a separate motion in the Southern District of New York to transfer the New York Action to the Central District of California.

---

[2] *Al Labade v. Activision Blizzard, Inc. et al.*, Case No. 2:19-cv-00423-R-AFM, (C.D. Cal.). The complaint in the California Action is attached as **Exhibit A** to the Fukumura Decl.

[3] *Winckler v. Activision Blizzard, Inc. et al.*, Case No. 1:19-cv-02095-LAP, (S.D.N.Y.). The complaint in the New York Action is attached as **Exhibit B** to the Fukumura Decl.

### D.     The Illinois Action

On March 12, 2019, Plaintiff, a resident of Hawaii, filed the instant action in this Court (the "Illinois Action").  This complaint asserts identical causes of action against the same Defendants, based on the same underlying conduct, as both the California and New York Actions.  (*See* Fukumura Decl. Ex. E: *In re Activision Blizzard, Inc. Securities Litigation*, Case Pending No. 13, at \*4–5 (J.P.M.L.) ("The Activision Blizzard Securities Actions are premised on nearly identical facts concerning misleading statements made by the Company and the Individual Defendants regarding the Company's relationship with Bungie, Inc.[;] each action concerns common defendants[; and] the proposed classes are virtually identical.").)[4]   While Plaintiff attempts to broaden the scope of its complaint, alleging Defendants also failed to disclose that there had been a deterioration in the business relationship between Activision and Bungie, (Compl. ¶ 5), this allegation is based on the exact same statements and covers the exact same time period as the California and New York Actions.

### III.     THIS ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a).

Section 1404(a) is intended to "prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation and quotation marks omitted).  Thus, even when venue is proper where the action is pending, section 1404(a) provides the Court discretion to transfer the action to a more convenient venue.  *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp.

---

[4] On March 14, 2019, Plaintiff filed a motion before the United States Judicial Panel on Multidistrict Litigation for Transfer of Related Actions to the Northern District of Illinois for Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407.  (Fukumura Decl. Ex. E.)  For the reasons outlined in this motion, Activision and Messrs. Kotick and Johnson contend that section 1404(a)—not section 1407—is the proper procedural vehicle for transfer and consolidation of the three actions.

2d 1003, 1006 (N.D. Ill. 2007). Transfer is appropriate under section 1404(a) where: "(1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *Wedi Corp. v. Seattle Glass Block Window, Inc.*, 2018 WL 1794771, at *5 (N.D. Ill. Apr. 16, 2018) (Alonso, J.). These factors weigh in favor of transfer.

### A. Defendants Do Not Dispute That Venue Is Proper in This District.

Under Section 27 of the Exchange Act, venue is proper in "any such district or in the district wherein the defendant is found or is an inhabitant or transacts business." *See* 15 U.S.C. § 78aa; 28 U.S.C. §1391(b). Because Activision transacts business globally, including in Illinois, venue is proper in this district. Accordingly, the proper basis for transfer is section 1404(a).[5]

### B. Venue is Also Proper in the Central District of California, Where the First-Filed Case Is Currently Pending.

The next question is whether venue is proper in the Central District of California. Plainly, the answer is yes. Indeed, a substantially identical case had been pending in the Central District of California for nearly two months before Plaintiff filed this action. Moreover, venue is proper in any district where "the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa. Given that Activision's corporate headquarters are in the Central District of California, and all of the complained-of acts, including the preparation and dissemination of the allegedly false and misleading public statements, occurred in California, venue is proper in Central District of California. (Roux Decl. ¶ 2, 5.)

---

[5] Section 1406(a) applies only where venue is not proper in the transferor district. *See Wedi Corp.*, 2018 WL 1794771, at *5 (Alonso, J.) (citing 28 U.S.C. § 1406(a)).

**C.      The Central District of California is More Convenient for the Parties and Witnesses.**

"In evaluating the convenience of the parties and witnesses, a court considers: (1) the plaintiff's choice of forum; (2) where events material to the lawsuit took place; (3) relative ease of access to proof; (4) the parties' convenience; and (5) the witnesses' convenience in litigating in the respective forums." *RAH Color Techs. LLC v. Adobe Sys., Inc.*, 2018 WL 2393875, at *1 (N.D. Ill. May 28, 2018).  Here, each of the factors weigh in favor of transfer, or are otherwise neutral.

**1.      Plaintiff's Choice of Forum—a District in Which He Does Not Reside and Where None of the Relevant Events Occurred—Should Be Given Little Weight.**

Deference to a plaintiff's choice of forum is not absolute. *See Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 902 (N.D. Ill. 2001).  For example, where a plaintiff "does not reside in his chosen forum, the deference owed [to] his choice is 'substantially reduced.'" *Carter v. Baldwin*, 2017 WL 3310976, at *2 (N.D. Ill. Aug. 3, 2017).  Additionally, the presumption in favor of a plaintiff's choice of forum is greatly discounted in class actions. *See Schenet v. Anderson*, 1986 WL 13751, at *2 (N.D. Ill. Dec. 1, 1986) (noting that "in a class action, any shareholder in the affected class who subsequently chooses to appear might be faced with similar inconveniences, depending on where the action proceeds").  And finally, "deference can be overcome when another forum 'has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events." *Wedi Corp*, 2018 WL 1794771, at *5 (Alonso, J.) (quoting *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1007 (N.D. Ill. 2007)).

Here, all three considerations counsel against deferring to Plaintiff's choice of forum.  First, Plaintiff is a resident of Hawaii, not Illinois.[6]  (Fukumura Decl. ¶ 8.)  Second, Plaintiff seeks to

---

[6] Even more, the named plaintiffs of the California and New York Actions also do not live in Illinois.

- 9 -

represent a nationwide class, consisting of "hundreds or thousands of members," (Compl. ¶ 42), two of whom have already filed actions in other districts, (Fukumura Decl. Exs. A and B). And third, Plaintiff does not challenge the conduct of Defendants that is in any way particularized to Illinois. To the contrary, Plaintiff's claims focus on public statements made by Defendants and disseminated from Activision's headquarters in California. (Roux Decl. ¶ 5.). Accordingly, Plaintiff's choice of forum should be given little, if any, deference.

### 2. The Events Underlying This Action Occurred in California.

"The situs of material events factor becomes more important when it differs from plaintiff's choice of forum, as it does here." *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 931 (N.D. Ill. 2017). In securities fraud cases such as this, "the material events are the creation and dissemination of the press releases" and investor conference calls. *See Plotkin*, 168 F. Supp. 2d at 903 (noting that "[t]he material events in this case are not the actual purchases of stock or the receipt of the press releases.").

Here, all of Activision's public statements, including those concerning its partnership with Bungie, were prepared, disseminated, or filed from its headquarters and executive offices in California. (Roux Decl. ¶ 5.) Accordingly, this factor strongly supports transfer, and further undercuts any deference accorded to Plaintiff's chosen forum.

### 3. The Majority of Evidence Is Located on the West Coast.

"This factor typically focuses on documentary evidence, as the convenience of witnesses is assessed separately." *Kjaer Weis*, 296 F. Supp. 3d at 931. Here, the majority of documentary evidence related to the claims and defenses in this action are located at Activision's corporate headquarters in Santa Monica, California. Indeed, all of the documents identified in the complaint, including press releases, SEC filings, and conference calls, were prepared and disseminated or filed from Activision's corporate headquarters in Santa Monica, California. (Roux Decl. ¶ 5.) Other

- 10 -

potentially relevant documentary evidence would likely be found at Bungie's headquarters in Bellevue, Washington—also on the West Coast. (Roux Decl. ¶ 9.) Accordingly, this factor also favors transfer. *See Hartford Cas. Ins. Co. v. Topsail Sportswear, Inc.*, 2010 WL 2757556, at *2 (N.D. Ill. July 8, 2010) ("The original site of the [documents] . . . remains the easiest and most convenient access for all parties.").

### 4. Defendants all Reside in California and None of the Parties Reside in Illinois.

Courts also "consider the residences and resources of the parties—in essence, their 'abilit[y] to bear the expense of trial in a particular forum.'" *Kjaer Weis*, 296 F. Supp. 3d at 934. Here, none of the parties reside in Illinois. To the contrary, all parties are located on the West Coast, or beyond. "Rather than being 'equally convenient' to both parties and their respective witnesses, Illinois is really equally ***inconvenient*** to both parties." *Id.* (emphasis in original). Because Plaintiff resides in Hawaii, California is arguably a more convenient—and certainly closer—forum, than Illinois. California is also more convenient for the Individual Defendants, all of whom reside in California. (Roux Decl. ¶¶ 6–8.) And California is more convenient for Activision, which is headquartered in California. *See Wedi Corp.*, 2018 WL 1794771, at *6 (Alonso, J.) (transferring suit to the state of the company's headquarters in the interest of convenience). Thus, this factor also supports transfer.

### 5. The Majority of Witnesses Reside on the West Coast.

"The convenience of witnesses is often viewed as the most important factor in the transfer balance, with the Court to consider not just the number of witnesses located in each forum but also the nature, quality, and importance of their testimony." *Yi v. Uber Techs., Inc.*, 2018 WL 5013568, at *3 (N.D. Ill. Oct. 15, 2018) (internal quotation marks omitted). While non-party witnesses are the focus of this inquiry, "it is still sensible to consider the residence of witnesses employed by parties, and to consider related travel cost and lost-work issues attendant to a distant trial, when trying

- 11 -

to make a pragmatic assessment of whether a venue transfer is warranted." *Barela v. Experian Info. Sols., Inc.*, 2005 WL 770629, at \*4 (N.D. Ill. Apr. 4, 2005); *see also Plotkin*, 168 F. Supp. 2d at 904 ("Defendants . . . and their current and future employees will be key in substantiating the parties' claims, particularly with regard to the source and validity of the press releases, the facts underlying the statements at issue, the information available to the officers and employees who authorized or made these statements, the circumstances of the agreements referenced in the press releases, product development, the financial performance of the Company, and the Company's corporate policies.").

Here, the majority of the witnesses are likely to be the Activision employees involved in either (i) the preparation and dissemination of the challenged statements, or (ii) the Bungie relationship. All individuals at Activision who participated in drafting and preparing these statements, and all executives responsible for managing the Bungie relationship and making the decision to terminate that relationship, reside in California. (Roux Decl. ¶¶ 5, 9.) Other potential witnesses would include Bungie employees, who are all likely to live on the West Coast given that Bungie is headquartered in Bellevue, Washington. (Roux Decl. ¶ 9.) These employees will also likely be the same witnesses for the California Action. Accordingly, transferring this case to California can facilitate the consolidation of the actions, and avoid duplicative litigation. *Flava Works, Inc. v. A4A Reseau, Inc.*, No. 15 C 610, 2015 WL 1926280, at \*2 (N.D. Ill. Apr. 28, 2015) (holding that a "transfer will also facilitate the consolidation of related cases and help to avoid the possibility of inconsistent rulings upon the issues presented. . . ."). Thus, this factor favors transfer.

### D. Transferring This Case to the Central District of California Would Advance the Interests of Justice.

In considering the interests of justice, courts in the Seventh Circuit weigh factors related "to the efficient administration of the court system." *Wedi Corp.*, 2018 WL 1794771, at \*5. These factors include: (1) the respective courts' familiarity with the applicable law; (2) whether there is

related litigation already pending in the transferee district; and (3) where the litigants are more likely to receive a speedy trial. *See id.*

> 1. **The Central District of California is Equally Familiar with the Applicable Law.**

This factor is neutral, as both courts are equally capable of and familiar with claims arising under the Securities Exchange Act. *See Plotkin*, 168 F. Supp. 2d at 905.

> 2. **This Action Should be Transferred to California for Consolidation with the First-Filed Action.**

Courts in the Seventh Circuit evaluate "the order of filing as part of the section 1404(a) transfer analysis." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 982 (7th Cir. 2010). "The first-to-file rule directs that the court presiding over the later-filed suit involving the same parties and issues should either transfer, stay, or dismiss that suit." *Fellowes, Inc. v. ACCO Brands Corp.*, 830 F. Supp. 2d 452, 455 (N.D. Ill. 2011). The doctrine is "premised on the notion that there should not be simultaneous litigation of essentially identical claims in two federal district courts." *Humphrey v. United Healthcare Servs., Inc.*, 2014 WL 3511498, at *2 (N.D. Ill. July 16, 2014).[7] Indeed, allowing this case to proceed in Illinois while related litigation proceeds in California could "result in inconsistent outcomes, which could confuse and complicate resolving the matters in dispute and awarding damages, if necessary." *Wedi Corp.*, 2018 WL 1794771, at *6.

> a. **The California Action was the First-Filed Suit.**

Turning to the chronology of each of the actions, there can be no dispute that the California Action, filed on January 18, 2019, is the "first-filed." (Fukumura Decl. ¶ 3.) This action, on the

---

[7] Plaintiff bears the "burden of showing any special circumstances which justify a divergence from the 'first-to-file' rule." *Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 34 F. Supp. 2d 1092, 1095 (N.D. Ill. 1999).

other hand, was filed nearly ***two months*** later, on March 12, 2019.

### b. The Parties Substantially Overlap.

When comparing the similarity of the parties in two putative class actions, "the relevant question is whether the class members would be the same in the two actions, not whether the named plaintiffs are the same." *Humphrey*, 2014 WL 3511498, at *3. Here, the parties are identical to those in the California Action. Both actions are brought on behalf of a putative nationwide class consisting of individuals "who purchased or otherwise acquired Activision Blizzard securities between August 2, 2018 and January 10, 2019. . . ." (Compl. ¶ 1; California Action Compl. ¶ 1.) And both actions name identical defendants. Thus, the overlap of the parties favors transfer.

### c. The Claims Substantially Overlap.

Claims "need not be identical to satisfy the 'same issues' requirement of the first-to-file doctrine. Rather, it is sufficient if the issues 'substantial[ly] overlap.'" *Humphrey*, 2014 WL 3511498, at *2 (quoting *Preci-Dip, SA v. Tri-Star Elect. Int'l, Inc.*, 2008 WL 5142401, at *2 (N.D. Ill. Dec. 4, 2008). The key issue in this case is the same as in the California Action—whether public statements made by Defendants concerning the Company's relationship with Bungie were materially false and misleading. (Compl. ¶ 5; California Action Compl. ¶ 5.) Notably, the complaints challenge many of the same statements on the same grounds. In fact, the complaint in this action repeats ***verbatim***, much of the same language in the California complaint. (*Compare* Compl. ¶¶ 26, 28–29 *with* California Action Compl. ¶¶ 26, 28–29 (citing identical paragraphs).) Indeed, Plaintiff has even admitted that the claims are largely identical. (*See* Fukumura Decl. Ex. E: *In re Activision Blizzard, Inc. Securities Litigation*, Case Pending No. 13, at *4 (J.P.M.L.) ("The Activision Blizzard Securities Actions are premised on nearly identical facts concerning misleading statements made by the Company and the Individual Defendants regarding the Company's

relationship with Bungie, Inc. Specifically, all three complaints refer to the same misleading statements.").) Accordingly, the substantial overlap of claims also supports transfer.

### d. The Available Relief Substantially Overlaps.

Lastly, there is no discernible difference between the relief sought by Plaintiff in this action and the relief sought in the California Action. In fact, both complaints demand the same exact relief. (*Compare* Compl. at 16 *with* California Action Compl. at 23 (requesting the same relief verbatim). Thus, the available relief substantially overlaps, and further supports transfer.

### 3. The Relative Docket Congestion and Time to Trial in Each Forum Favors Transfer to the Central District of California.

When considering judicial efficiency, courts look to "docket congestion and likely speed to trial in the transferor and potential transferee forums." *Arion, LLC v. LMLC Holdings, Inc.*, 2018 WL 6590533, at \*4 (N.D. Ill. Dec. 14, 2018). The median time from filing to trial is 21.5 months for the Central District of California, compared to 38.3 months for the Northern District of Illinois. (*See* Fukumura Decl. Exs. C and D.) Furthermore, the percentage of civil cases over three years old is 5.2% in the Central District of California, compared to the 29.1% in the Northern District of Illinois. (*Id.*) As such, this factor also weighs in favor of transfer.

## IV. CONCLUSION

For these reasons, the Court should transfer this action to the Central District of California.

Dated: March 19, 2019   H. NICHOLAS BERBERIAN (3121551)
COLLETTE A. WOGHIREN (6312422)
NEAL, GERBER & EISENBERG LLP
Two North Lasalle Street, Suite 1700
Chicago, Il 60602-3801
Telephone: (312) 269-8000

By: */s/ H. Nicholas Berberian*
    H. Nicholas Berberian

KOJI F. FUKUMURA (*pro hac vice* forthcoming)
RYAN E. BLAIR (*pro hac vice* forthcoming)

- 15 -

COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000

Attorneys for Defendants
ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, and
COLLISTER JOHNSON