**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CHASE HAMANO, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, SPENCER NEUMANN, and COLLISTER JOHNSON,<br><br>Defendants. | Case No. 1:19-cv-01741<br><br><u>CLASS ACTION</u><br><br>Honorable Jorge L. Alonso |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE R N CROFT FINANCIAL GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 2

ARGUMENT .................................................................................................................................. 3

I.     THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF ........................ 4

    A.     The Procedure Required by the PSLRA ....................................................... 4

        1.     Movant is Willing to Serve as Class Representative ..................................... 5

        2.     Movant Has the Requisite Financial Interest in the Relief Sought by the Class .... 5

    B.     Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure ................................................................................................................ 6

        1.     Movant's Claims are Typical of the Claims of all the Class Members .................... 7

        2.     Movant will Adequately Represent the Class ............................................. 7

II.     MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED ............................... 9

CONCLUSION ............................................................................................................................. 10

**TABLE OF AUTHORITIES**

**Cases**

*Chandler v. Ulta Beauty, Inc.*,
  No. 18-cv-1577, 2018 U.S. Dist. LEXIS 107340 (N.D. Ill. June 26, 2018) ............................ 6, 10

*De La Fuente v. Stokely-Van Camp, Inc.*,
  713 F.2d 225 (7th Cir. 1983), *overruled on other grounds by Green v. Mansour*, 474 U.S. 64
  (1985) ................................................................................................................................... 7

*Gunderson v. Klondex Mines Ltd.*,
  No. 3:18-cv-00256-LRH-CBC, 2018 U.S. Dist. LEXIS 213995 (D. Nev. Dec. 18, 2018) .......... 10

*In re Groupon Secs. Litig.*,
  Master File No. 12 C 2450, 2012 U.S. Dist. LEXIS 123899 (N.D. Ill. Aug. 28, 2012) ................ 7

*Johnson v. Tellabs, Inc.*,
  214 F.R.D. 225 (N.D. Ill. 2002) ............................................................................................ 1, 8

*Lax v. First Merchants Acceptance Corp.*,
  1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ................................................................. 7

*Maiden v. Merge Techs., Inc.*,
  No. 06-cv-349, 2006 U.S. Dist. LEXIS 85635 (E.D. Wis. Nov. 21, 2006) ................................... 5

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) .................................................................................................... 7

*Takara Trust v. Molex Inc.*,
  229 F.R.D. 577 (N.D. Ill. 2005) ............................................................................................ 7, 8

**Statutes**

15 U.S.C. § 78u-4(a)(1) .................................................................................................................. 4

15 U.S.C. § 78u-4(a)(3)(A)(i) ........................................................................................................ 4

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ................................................................................................... 4

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................... 1, 6, 8

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................................ 4

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .............................................................................................. 4, 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ........................................................................................... 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .................................................................................................. 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ............................................................................................ 10

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................................... 9, 10

15 U.S.C. § 78u-4(e) ......................................................................................................................... 5

**Other Authorities**

Private Securities Litigation Reform Act of 1995 ................................................................ 1, 2, 4, 8

Securities and Exchange Act of 1934 ......................................................................................... 1, 5

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................... passim

Fed. R. Civ. P. 23(a) ..................................................................................................................... 6, 7

Fed. R. Civ. P. 23(a)(3) ................................................................................................................. 7, 8

Fed. R. Civ. P. 23(a)(4) ..................................................................................................................... 8

**PRELIMINARY STATEMENT**

Presently pending before the Court is the above-captioned action (the "Action")[1] brought on behalf of all persons who purchased the securities of Activision Blizzard, Inc. ("Activision Blizzard" or the "Company") between August 2, 2018 and January 10, 2019, inclusive ("Class Period"). Plaintiff in the Action alleges violations of the Securities and Exchange Act of 1934 (the "Exchange Act") against the Company, Robert A. Kotick ("Kotick"), Spencer Neumann ("Neumann"), and Collister Johnson ("Johnson") (all defendants other than the Company, collectively, the "Individual Defendants").[2]

Movants R N Croft Financial Group Inc. and Robert Landry (collectively, "R N Croft Financial Group" or "Movant") collectively lost approximately $806,000 as a result of the alleged fraud during the Class Period. Movant respectfully submits this Memorandum of Law in support of its Motion for: (1) appointment as lead plaintiff ("Lead Plaintiff") pursuant to the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (2) for approval of its selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel.

The PSLRA provides for the Court to appoint as Lead Plaintiff the movant or group of movants that have the largest financial interest in the litigation who have also made a *prima facie* showing that they are adequate class representatives under Rule 23 of the Federal Rules of Civil Procedure. *See generally Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002). Movant satisfies both requirements.

---

[1] There are two other related actions making similar allegations against Activision Blizzard: (1) *Labade v. Activision Blizzard, Inc., et al.,* Case No. 1:19-cv-00423 filed on January 18, 2019 in the United States District Court for the Central District of California (the "*Labade* Action"); and (2) *Winckler v. Activision Blizzard, Inc., et al.,* Case No. 1:19-cv-02095 filed on March 7, 2019 in the United States District Court for the Southern District of New York (the "*Winckler* Action") (collectively, the "Related Actions").

[2] The Action alleges violations under Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder.

1

Movant believes that it has the largest financial interest in the outcome of the case.[3] As such, Movant meets the requirements of the PSLRA for appointment as Lead Plaintiff. Moreover, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the Class, and it will fairly and adequately represent the interests of the Class.[4]

Accordingly, Movant submits that it should be appointed Lead Plaintiff. Additionally, Movant's selection of Levi & Korsinsky as Lead Counsel and Cohen Milstein as Liaison Counsel should be approved by this Court to represent the Class.

## STATEMENT OF FACTS

Activision Blizzard develops and distributes content and services on video game consoles, personal computers (PC), and mobile devices. ¶ 2.[5]

On April 29, 2010, the Company announced its entry, through its wholly owned subsidiary Activision Publishing, Inc. ("Activision Publishing"), into an agreement with Bungie, Inc. ("Bungie"), the developer of blockbuster game franchises including *Halo*, *Myth* and *Marathon*. ¶3. The agreement with Bungie gave Activision Blizzard exclusive rights to publish and distribute video games developed by Bungie for the next ten years. *Id.*

The partnership between Activision Blizzard and Bungie yielded the commercially successful *Destiny* franchise, a series of science fiction-themed video games. ¶4. In September 2014, Activision Blizzard released *Destiny*, the first installment in the franchise, developed by Bungie, and sold $500

---

[3] Movant's certifications identifying their transactions during the Class Period, a chart identifying their collective losses, and a joint declaration executed by movants evidencing their intention to pursue the Action in a cohesive and collaborative manner, are attached collectively to the Declaration of Mark Levine, dated March 19, 2019 ("Levine Decl."), as Exhibits A, B, and C, respectively.

[4] The Action defines the "Class" as "all those who purchased or otherwise acquired Activision Blizzard securities during the Class Period [] and were damaged upon the revelation of the alleged corrective disclosures." Excluded from the Class are the Defendants, the officers and directors of Activision Blizzard, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

[5] Citations to "¶" are to paragraphs of the Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") filed in the first-filed *Labade* Action on January 18, 2019. The facts set forth in the Complaint are incorporated herein by reference.

million of *Destiny* into retail stores and first parties worldwide on the first day of its release, making the game the largest video game franchise launch in history at that time. *Id.* Bungie developed and Activision Blizzard released four expansions for *Destiny* over the following two years. *Id.* On September 15, 2017, Activision Blizzard announced that *Destiny 2* had "surpassed the original's records for engagement and digital sales in launch week." *Id.* To date, Bungie has developed and Activision Blizzard has released three expansions for *Destiny 2*. *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. ¶5. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the termination of Activision Blizzard and Bungie's partnership, giving Bungie full publishing rights and responsibilities for the *Destiny* franchise, was imminent; (ii) the termination of the two companies' relationship would foreseeably have a significant negative impact on Activision Blizzard's revenues; and (iii) as a result, Activision Blizzard's public statements were materially false and misleading at all relevant times. *Id.*

On January 10, 2019, Activision Blizzard and Bungie announced the end of their business relationship. ¶6. That same day, in an SEC filing, Activision Blizzard stated that Bungie "would assume full publishing rights and responsibilities for the Destiny franchise. Going forward, Bungie will own and develop the franchise." ¶7.

Following these announcements, the Company's stock price fell $4.81 per share, or 9.37%, to close at $46.54 on January 11, 2019. ¶8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages. ¶9.

**ARGUMENT**

## I. THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A. The Procedure Required by the PSLRA

The PSLRA establishes the procedure for appointment of the Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i). The PSLRA provides a presumption that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against it. Therefore, Movant is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed Lead

4

Plaintiff in the Action.

### 1. Movant is Willing to Serve as Class Representative

On January 18, 2019, counsel in the first-filed *Labade* Action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i) of the Exchange Act, which announced that a securities class action had been filed against Activision Blizzard and certain of its officers and directors, and which advised putative class members that they had sixty days from the date of the Notice to file a motion to seek appointment as a Lead Plaintiff in the Action.[6]

Movant has reviewed the complaint filed in this Action and has timely filed the instant Motion pursuant to the Notice.

### 2. Movant Has the Requisite Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants with the largest financial loss in the relief sought by the action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Loss Chart, Levine Decl., Ex. B. The movant who "has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 . . . is presumptively entitled to lead plaintiff status." *Maiden v. Merge Techs., Inc.*, No. 06-cv-349, 2006 U.S. Dist. LEXIS 85635, at *13 (E.D. Wis. Nov. 21, 2006) (citation omitted).

Under the PSLRA, damages are calculated based on: (1) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (2) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold its shares, if it sold its shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e).

---

[6] The Notice was published over *Globe Newswire*, a widely-circulated national business-oriented wire service. *See* Press Release, Levine Decl. Ex. D.

During the Class Period, Movant purchased Activision Blizzard shares in reliance upon the materially false and misleading statements issued by Defendants and was injured thereby. Movant's losses are $806,630.56 when applying a last-in-first-out analysis. *See* Loss Chart, Levine Decl. Ex. B. To the best of its knowledge, there are no other applicants who have sought, or are seeking, appointment as Lead Plaintiff that have a larger recoverable financial interest and also satisfy Rule 23.

**B. Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure**

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification outlined in Fed. R. Civ. P. 23, only two – typicality and adequacy – are recognized as appropriate for consideration at this stage. *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005). Furthermore, only a "preliminary showing" of typicality and adequacy is required. *See In re Groupon Secs. Litig.*, 2012 U.S. Dist. LEXIS 123899, at *9 (N.D. Ill. Aug. 28, 2012). Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 6, 1997).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. Civ. P. 23, thereby justifying its appointment as Lead Plaintiff.

### 1. Movant's Claims are Typical of the Claims of all the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The typicality requirement, however, does not demand that the representative party be situated identically with all other members of the Class. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232-233 (7th Cir. 1983), *overruled on other grounds by Green v. Mansour*, 474 U.S. 64 (1985). Movant plainly meets the typicality requirement of Rule 23 because: (1) it suffered the same injuries as the absent class members; (2) it suffered as a result of the same course of conduct by Defendants; and (3) its claims are based on the same legal issues. *See Takara Trust*, 229 F.R.D. at 580.

In this case, the typicality requirement is met because the claims of Movant are identical to, and neither compete nor conflict with, the claims of the other Class members. Movant, like the other members of the Class, purchased Activision Blizzard securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. Thus, the claims of Movant are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and its losses result from Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Tellabs*, 214 F.R.D. at 228.

### 2. Movant will Adequately Represent the Class

Movant is an adequate class representative. Under Rule 23(a)(4), the representative party

7

must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is any evidence of antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B); *see Takara Trust*, 229 F.R.D. at 580.

Movant's interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Action based on the large financial losses it suffered as a result of the wrongful conduct alleged in the Action. This motivation, combined with Movant's identical interest with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class.

Further, as detailed in Movant's Joint Declaration, Levine Decl., Ex. C, it is comprised of sophisticated investors with substantial experience investing in capital markets that are committed to this litigation. Id. ¶¶ 2–6. For example, movant Landry is a sophisticated investor with approximately 40 years of experience investing in securities. R N Croft Financial Group clearly is a sophisticated investor in that it is portfolio management company providing asset management services. Id. Moreover, the group members discussed the importance of joint decision-making and maintaining communications that will enable each of them to confer, with or without counsel, via telephone and/or e-mail on short notice to ensure that the R N Croft Financial Group is able to make timely decisions. ¶ 13. Prior to moving for appointment as a group, the members also discussed, among other things: that they will be provided with periodic status reports and hold regular joint calls to discuss: (i) new developments in the action, (ii) all significant decisions concerning the prosecution of the case, (iii) litigation and settlement strategies, (iv) significant pleadings and briefs, (v) important discovery issues, (vi) attorney and expert work being performed, and (vii) any other issues bearing

8

on the effective and efficient prosecution of this matter. ¶ 14.

The R N Croft Financial Group members have committed to provide fair and adequate representation, oversee counsel, and obtain the largest possible recovery against all culpable parties consistent with good faith and vigorous advocacy. ¶12. To ensure this litigation is managed effectively, they have agreed to make themselves available for any appearances, depositions, and other necessary meetings to facilitate the prosecution of the Actions. Id. ¶ 14. Furthermore, the Movants do not anticipate that any disagreements will arise in the process of making decision, they agree that they will make good faith efforts to reach a consensus with respect to all decisions arising out of the Actions. ¶16. However, in the unlikely event that a disagreement arises, they have agreed to present their respective views to a qualified independent arbitrator who has previously served as a state or federal judge and to be bound by any decisions made by the arbitrator. Id. Therefore, the R N Croft Financial Group has established that it will prosecute the Action vigorously on behalf of the Class.

In addition, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, it is, therefore, the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and should be appointed as such to lead the Action.

## II. MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to

Court approval. 15 U.S.C. § 78u-4(a) (3)(B) (v). The Court should interfere with the Lead Plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class and Cohen Milstein as the proposed Liaison Counsel. The members of Levi & Korsinsky and Cohen Milstein have extensive experience in successfully prosecuting complex securities class actions such as this one and are well-qualified to represent the Class. *See* Levine Decl. Ex. E (Firm Résumés of Levi & Korsinsky and Cohen Milstein). Moreover, Levi & Korsinsky has often been appointed in similar actions arising under the federal securities laws on behalf of investors. *See e.g., Gunderson v. Klondex Mines Ltd.,* No. 3:18-cv-00256-LRH-CBC, 2018 U.S. Dist. LEXIS 213995, at *12 (D. Nev. Dec. 18, 2018) (appointing Levi & Korsinsky as lead counsel finding "no reason that…LK…will not fairly and adequately represent the interests of the class"); *Isaacs*, 2018 U.S. Dist. LEXIS 200717, at *8 (appointing Levi & Korsinsky as lead counsel) *recons. denied*, *In re Tesla, Inc. Sec. Litig.*, 2018 U.S. Dist. LEXIS 212238; *Chandler*, 2018 U.S. Dist. LEXIS 107340, at *18 (appointing Levi & Korsinsky and noting the firm's "extensive experience…in the area of securities law").

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) appoint Movant as Lead Plaintiff for the Class in the Action; and (2) approve its selection of Levi & Korsinsky as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class.

Dated: March 19, 2019                      Respectfully submitted,

                                              **COHEN MILSTEIN SELLERS & TOLL PLLC**

                                              **By: /s/ Carol V. Gilden**
                                              **Carol V. Gilden**
                                              190 South LaSalle Street
                                              Suite 1705
                                              Chicago, IL 60603
                                              Atty. ID: 6185530
                                              t: 312.357.0370
                                              f: 312.357.0369
                                              cgilden@cohenmilstein.com


                                              **LEVI & KORSINSKY, LLP**
                                              Mark Levine
                                              55 Broadway, 10th Floor
                                              New York, NY 10006
                                              Tel: (212) 363-7500
                                              Email: mlevine@zlk.com

                                              Shannon L. Hopkins
                                              1111 Summer Street, Suite 403
                                              Stamford, CT 06905
                                              Tel: (203) 992-4523
                                              Email: shopkins@zlk.com

                                              *Attorneys for Movant Activision Blizzard Investor Group*

**CERTIFICATE OF SERVICE**

I, Carol v. Gilden, the undersigned attorney, hereby certify that on the 19th day of March, 2019, I caused to be served a copy of the within and **Memorandum of Points and Authorities in Support of Motion of the R N Croft Financial Group for Appointment as Lead Plaintiff and Approval of Selection of Counsel** via the Court's CM/ECF system, on all counsel of record.

/s/ Carol V. Gilden
Carol V. Gilden

12