

**BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**



MDL Docket No. _____

In re Activision Blizzard, Inc. Securities
Litigation

**MEMORANDUM IN SUPPORT OF
MOVANT CHASE HAMANO'S
MOTION FOR TRANSFER OF
RELATED ACTIONS TO THE
NORTHERN DISTRICT OF ILLINOIS
FOR CONSOLIDATED PRETRIAL
PROCEEDINGS PURSUANT TO 28
U.S.C. § 1407**

## TABLE OF CONTENTS

                                                                                            **Page**

I.      INTRODUCTION ................................................................................................................1

II.     FACTUAL BACKGROUND.............................................................................................2

III.    ARGUMENT......................................................................................................................3

        A.      Applicable Legal Standard......................................................................................3

        B.      These Actions Should Be Transferred for Consolidated Pretrial
                Proceedings Pursuant to 28 U.S.C. § 1407 ............................................................4

        C.      Centralization Will Further the Convenience of the Parties and Witnesses ............5

        D.      Centralization Will Promote the Just and Efficient Conduct of the Actions ...........6

        E.      The Actions Should Be Transferred to the Northern District of Illinois ................7

IV.     CONCLUSION...................................................................................................................8

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Air West, Inc. Sec. Litig.*,
384 F. Supp. 609, (J.P.M.L. 1974)..................................................................................... 6

*In re American Airlines, Inc., Privacy Litigation*,
342 F. Supp. 2d 1355 (J.P.M.L. 2004)............................................................................... 3

*In re AT&T Corp. Sec. Litig.*,
No. 1399, 2001 WL 34834425 (J.P.M.L. Apr. 19, 2001).................................................... 5

*In re BP p.l.c. Sec. Litig.*,
734 F. Supp. 2d 1376, (J.P.M.L. 2010)............................................................................... 4

*In re Charter Communications, Inc., Sec. Litig.*,
254 F. Supp. 2d 1379 (J.P.M.L. 2003)................................................................................ 4

*In re Computervision Corp. Sec. Litig.*,
814 F. Supp. 85 (J.P.M.L. 1993)........................................................................................ 3

*In re Hotel Telephone Charge Antitrust Litig.*,
341 F. Supp. 771 (J.P.M.L. 1972)...................................................................................... 4

*In re Indus. Wine Contracts Sec. Litig.*,
386 F. Supp. 909 (J.P.M.L. 1975)....................................................................................... 6

*In re Magic Marker Sec. Litig.*,
470 F. Supp. 862 (J.P.M.L. 1979)....................................................................................... 8

*In re Motorcar Parts & Accessories, Inc. Sec. Litig.*,
No. 1323, 2000 U.S. Dist. LEXIS 2585 (J.P.M.L. Mar. 6, 2000) ...................................... 7

*In re New York City Mun. Sec. Litig.*,
439 F. Supp. 267 (J.P.M.L. 1977)....................................................................................... 7

*In re Pilgrim's Pride Fair Labor Standards Act Litig.*,
489 F. Supp. 2d 1381 (J.P.M.L. 2003)................................................................................ 9

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
290 F. Supp. 2d 1374 (J.P.M.L. 2003)................................................................................ 9

*In re Progressive Corp. Ins. Underwriting & Rating Practices Litigation*,
259 F. Supp. 2d 1370 (J.P.M.L. 2003)................................................................................ 3

*In re Qwest Communications Intern., Inc., Securities & "Erisa" Litig. (No. II),*
    444 F. Supp. 2d 1343 (J.P.M.L. 2006) ................................................................................ 4

*In re Raymond Lee Org., Inc. Sec. Litig.,*
    446 F. Supp. 1266 (J.P.M.L. 1978) ...................................................................................... 8

*In re TransOcean Tender Offer Sec. Litig.,*
    415 F. Supp. 382 (J.P.M.L. 1976) ........................................................................................ 8

*In re Tyco Int'l, Ltd. Sec. Litig.,*
    2000 U.S. Dist. LEXIS 5551 (J.P.M.L. Apr. 26, 2000) ...................................................... 7

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(ii) ..................................................................................................... 4

15 U.S.C. Section 78u-4(a)(3)(B) ................................................................................................ 9

**OTHER AUTHORITIES**

Administrative Office of the United States Courts,
    *Federal Court Management Statistics*, vii, (2000) ........................................................ 9, 10

iii

## I.    INTRODUCTION

Plaintiff Chase Hamano submits this Memorandum of Law in support of his Motion to Transfer of Related Actions to the Northern District of Illinois for Consolidated Pretrial Proceedings pursuant to 28 U.S.C. § 1407. There are three securities class actions, *Labade v. Activision Blizzard Inc., et al.*, Docket No. 2:19-cv-00423 (C.D. Cal.); *Winckler v. Activision Blizzard Inc., et al.*, Docket No. 1:19-cv-02095 (S.D.N.Y.); and *Hamano v. Activision Blizzard Inc., et al.*, Docket No.: 1:19-cv-01741 (N.D. Ill.); (collectively the "Activision Blizzard Securities Actions" or the "Related Actions") pending against Activision Blizzard, Inc. ("Activision Blizzard" or the "Company") and Robert A. Kotick, Spencer Neumann, and Collister Johnson (the "Individual Defendants"). The Activision Blizzard Securities Actions are virtually identical, and their centralization in the Northern District of Illinois will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the actions.

The Activision Blizzard Securities Actions fit squarely within the statutory prerequisites of Section 1407. All of the pending cases involve one or more common questions of fact, as each asserts identical causes of action arising out of nearly identical allegations of material misleading statements or omissions in connection with the Company's business relationship with Bungie, Inc. Centralization and consolidation of the actions will serve the convenience of the parties and witnesses by eliminating duplicative proceedings in various locations. Further, transfer and consolidation will promote the just and efficient conduct of the actions. Generally, centralized oversight of pretrial fact development in what are likely to be complex and document-intensive actions will minimize waste and inefficiency in the conduct of discovery. Centralization will also provide a single forum in which future "tag-along" actions may be transferred to streamline subsequent proceedings and promote judicial economy.

Allowing these duplicative lawsuits to proceed in multiple forums would be at odds, not only with the goals of Section 1407, but also the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which governs the Activision Blizzard Securities Actions here. Congress directed that in putative class actions subject to the PSLRA, courts first should consider motions to consolidate substantially related actions, and then should appoint a Lead Plaintiff to manage the litigation on behalf of a plaintiff class. Transfer will ensure that the goals of the PSLRA are not frustrated here, where the parties face the prospect of conflicting rulings, including the appointment of a Lead Plaintiff in three different judicial districts.

Movant Chase Hamano respectfully requests that the actions be consolidated for pretrial proceedings in the Northern District of Illinois.

## II.    FACTUAL BACKGROUND

Between January 18, 2019 and March 12, 2019, various plaintiffs filed three separate actions on behalf of exactly the same putative class—persons who purchased or otherwise acquired Activision Blizzard securities between August 2, 2018 and January 10, 2019. The cases at issue in this petition for consolidation and transfer are as follows:

1. *Labade v. Activision Blizzard, Inc., Kotick, Neumann, and Johnson*, Case No., 2:19-cv-423, filed in Central District of California on January 18, 2019 and assigned to the Honorable Manual L. Real ("Labade Comp.");

2. *Winckler v. Activision Blizzard, Inc Kotick, Neumann, and Johnson*, Case No., 1:19-cv-2095, filed in Southern District of New York on March 7, 2019 and assigned to the Honorable Loretta A. Preska ("Winckler Comp."); and

3. *Hamano v. Activision Blizzard, Inc., Kotick, Neumann, and Johnson*, Case No., 1:19-cv-1741, filed in Northern District of Illinois on March 12, 2019 and assigned to the Honorable Jorge L. Alonso ("Hamano Comp.").

All three of the pending related actions were filed within the last three months and are in the earliest stages. No responsive pleadings have been filed, no hearings have been held, and no discovery has occurred.

## III.  ARGUMENT

### A.  Applicable Legal Standard

28 U.S.C. § 1407(a) specifies that the Panel may transfer two or more civil cases for coordinated or consolidated pretrial proceedings upon a determination that (1) the cases "involv[e] one or more common questions of fact;" (2) the transfers would further "the convenience of parties and witnesses;" and (3) the transfers "will promote the just and efficient conduct of [the] actions." The objective of consolidation under Section 1407 is to eliminate duplicative discovery, avoid conflicting rulings and schedules, reduce litigation costs, and save time and effort for the parties, attorneys, witnesses, and courts.[1]

Indeed, the Panel has "frequently held that" in cases such as this, "the possibility of duplicative discovery resulting from common fact questions and the threat of inconsistent judicial decisions of discovery, class and other issues requires transfer of multidistrict litigation to a single judge under Section 1407." *In re Hotel Telephone Charge Antitrust Litig.*, 341 F. Supp. 771, 772 (J.P.M.L. 1972) (citations omitted).

Securities class actions cases subject to the PSLRA are particularly well suited for transfer under 28 U.S.C. § 1407(a). In granting transfer of a number of actions brought under the same

---

[1] *See In re Computervision Corp. Sec. Litig.*, 814 F. Supp. 85, 86 (J.P.M.L. 1993); *In re American Airlines, Inc., Privacy Litigation*, 342 F. Supp. 2d 1355, 1356 (J.P.M.L. 2004) ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification)[.]"); *In re Progressive Corp. Ins. Underwriting & Rating Practices Litigation*, 259 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003) (same).

3

securities laws provisions invoked here, the Panel recently observed that it "has typically centralized cases involving these kinds of securities claims and implicating common factual issues." *In re BP p.l.c. Sec. Litig.,* 734 F. Supp. 2d 1376, 1377-78 (J.P.M.L. 2010).[2] Further, the PSLRA contemplates that related actions should be consolidated at the outset and then a Lead Plaintiff should be appointed:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered.

15 U.S.C. § 78u-4(a)(3)(B)(ii).

## B.    These Actions Should Be Transferred for Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407

The Activision Blizzard Securities Actions are premised on nearly identical facts concerning misleading statements made by the Company and the Individual Defendants regarding the Company's relationship with Bungie, Inc. Specifically, all three complaints refer to the same misleading statements. *See, e.g.,* Labade Comp. ¶ 26 ("On August 2, 2018, Activision Blizzard . . . informed investors that '[w]e have . . . established a long-term alliance with Bungie to publish its game universe, Destiny."); Winckler Comp. ¶ 26 ("On August 2, 2018, Activision Blizzard . . . informed investors that '[w]e have . . . established a long-term alliance with Bungie to publish its game universe, *Destiny*."); Hamano Comp. ¶ 26 ("On August 2, 2018, Activision Blizzard . . .

---

[2] *See also, e.g. In re Charter Communications, Inc., Sec. Litig.,* 254 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (centralizing various actions centered on "whether Charter has misrepresented its financial condition to the public, or engaged in improper accounting practices, or both in violation of the federal securities laws"); *In re Qwest Communications Intern., Inc., Securities & "Erisa" Litig. (No. II),* 444 F. Supp. 2d 1343, 1345 (J.P.M.L. 2006) (centralizing actions centered on alleged "financial irregularities in connection with Qwest securities").

informed investors that '[w]e have . . . established a long-term alliance with Bungie to publish its game universe, Destiny.").

In addition, each action concerns common defendants, Activision Blizzard, Inc., Robert A. Kotick, Spencer Neumann, and Collister Johnson. Further, the proposed classes are virtually identical in all three actions. *See* Labade Comp. ¶ 1 ("all persons other than Defendants who purchased or otherwise acquired Activision Blizzard securities between August 2, 2018 and January 10, 2019, both dates inclusive"); Winckler Comp. ¶ 1 ("all those who purchased or otherwise acquired the Activision Blizzard securities between August 2, 2018 and January 10, 2019, both dates inclusive"); Hamano Comp. ¶ 1 ("all persons who purchased or otherwise acquired Activision Blizzard securities between August 2, 2018 and January 10, 2019").

Given these similarities in the Activision Blizzard Actions, the first requirement of Section 1407—that the cases "involve[e] one or more common questions of fact"—is clearly satisfied. *See, e.g., In re AT&T Corp. Sec. Litig.*, No. 1399, 2001 WL 34834425, at *1 (J.P.M.L. Apr. 19, 2001) (noting that "transfer under Section 1407 does not require a complete identity or even majority of common factual issues . . . [n]or is the presence of additional or differing legal theories significant when the underlying actions still arise from a common factual core"); *see also In re Air West, Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974) (common questions of fact are presumed for purposes of Section 1407 "when two or more complaints assert comparable allegations against identical defendants based upon similar transactions and events.").

## C. Centralization Will Further the Convenience of the Parties and Witnesses

Centralization will also serve "the convenience of parties and witnesses." The defendants named in each of the three complaints are identical. As a result, depositions of the same individuals are likely, and nearly all of the same documents will almost certainly be demanded for inspection. For the same discovery to be conducted across two judicial districts would be both duplicative and

5

wasteful of the parties' and the witnesses' resources. The possibility of future tag-along actions also militates in favor of centralization. *See In re Indus. Wine Contracts Sec. Litig.*, 386 F. Supp. 909, 912 (J.P.M.L. 1975) (noting the potential for tag-along actions as a consideration in favor of centralization).

If the actions are centralized, all counsel will be able to work together in one pretrial proceeding, rather than duplicate efforts in three different actions in three courts on opposite coasts. They can thus "apportion their workload and otherwise combine forces to effectuate an overall savings of cost and a minimum of inconvenience to all concerned with the discovery activities." *In re New York City Mun. Sec. Litig.*, 439 F. Supp. 267, 270 (J.P.M.L. 1977).

## D.   Centralization Will Promote the Just and Efficient Conduct of the Actions

Centralization will promote the just and efficient conduct of the actions because of the shared factual issues, identical legal claims, and identical defendants. Further, all of the actions are putative class actions, with an identical class period, raising the risk of inconsistent rulings with respect to the various putative classes. In these circumstances, the Panel has not hesitated to transfer securities actions under Section 1407 in order to allow a single transferee court to resolve class certification issues. *See, e.g., In re Motorcar Parts & Accessories, Inc. Sec. Litig.*, No. 1323, 2000 U.S. Dist. LEXIS 2585, at *2 (J.P.M.L. Mar. 6, 2000) ("Centralization under Section 1407 is thus necessary . . . in order to prevent inconsistent pretrial rulings (especially with respect to class certification issues) . . . ."); *In re Tyco Int'l, Ltd. Sec. Litig.*, 2000 U.S. Dist. LEXIS 5551, at *3 (J.P.M.L. Apr. 26, 2000) (stating that centralization is necessary to "prevent inconsistent pretrial rulings, particularly since plaintiffs in all actions seek to represent the same putative class of securities purchasers, although with slight variations in the class periods").

The Panel has noted that the extent of the progress of actions sought to be centralized will be taken into account in determining whether to order centralization. Indeed, the fact that certain

6

actions have progressed far along the path toward trial is the primary ground on which the Panel has denied centralization of securities actions with common issues of fact. *See, e.g., In re Magic Marker Sec. Litig.*, 470 F. Supp. 862, 865-66 (J.P.M.L. 1979); *In re Raymond Lee Org., Inc. Sec. Litig.*, 446 F. Supp. 1266, 1268 (J.P.M.L. 1978). Here, no discovery requests have yet been served, and no responsive pleadings have been filed. Coordination of discovery and of motions to dismiss will, therefore, be crucial to avoid simultaneous motion practice, potentially conflicting pretrial rulings on identical factual and legal questions, and waste of judicial and party resources. "[T]he likelihood of motions for . . . dismissal and summary judgment in [multiple] actions . . . makes Section 1407 treatment . . . necessary to prevent conflicting pretrial rulings and conserve judicial effort." *In re TransOcean Tender Offer Sec. Litig.*, 415 F. Supp. 382, 384 (J.P.M.L. 1976) (emphasis added). Similarly, unless the Activision Blizzard Securities Actions are coordinated, three different courts will be called upon to decide conflicting lead plaintiff motions brought under 15 U.S.C. Section 78u-4(a)(3)(B).

## E. The Actions Should Be Transferred to the Northern District of Illinois

The Panel has indicated that the condition of the dockets in various districts is an important factor in determining the most appropriate transferee court because it is important that districts not be overburdened with litigation which could prevent them from effectively handling the litigation before them. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 290 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003); *In re Pilgrim's Pride Fair Labor Standards Act Litig.*, 489 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003).

Transfer to the Northern District of Illinois will allow for a more efficient use of judicial facilities. Although the other possible transferee courts are unquestionably capable of adjudicating a consolidated proceeding, the Northern District of Illinois has general docket conditions that are materially favorable than the conditions of the other potential transferee courts.

7

The best indicator for general docket conditions is the weighted filings per judgeship figure. *See* Administrative Office of the United States Courts, *Federal Court Management Statistics*, vii, (2000) ("Since 1946, the federal judiciary has applied weights to filings in the U.S. district courts to account for the different amounts of time judges require to resolve various types of civil and criminal actions. The total for 'weighted filings' is the sum of all weights assigned to civil cases and to criminal felony defendants.").

According to the United States Courts' most recent *Federal Court Management Statistics* released on December 31, 2018, the Northern District of Illinois has vastly more favorable docket conditions as compared to the Southern District of New York and Central District of California. The Northern District of Illinois had 446 weighted filings per judgeship while the Central District of California and the Southern District of New York had 650 and 575 weighted filings per judgeship, respectively.[3] The statistical report strongly indicates that the Northern District of Illinois possesses materially favorable conditions as compared to the other potential transferee courts.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff Chase Hamano respectfully requests the Panel to centralize and consolidate all pending and future Activision Blizzard Securities Actions in the Northern District of Illinois.

---

[3] As of December 31, 2018, the average weighted filings figure for all Judicial Districts was 513.

8

DATED: March 14, 2019

Respectfully Submitted,

By:/s/Ian D. Berg
Ian D. Berg
Jeffrey S. Abraham
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
Tel. (212) 279-5050
Fax. (212) 279-3655
JAbraham@aftlaw.com
IBerg@aftlaw.com

Marvin A. Miller
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, Illinois 60603
Tel. (312) 332-3400
Fax. (312) 676-2676
mmiller@millerlawllc.com
*Attorneys for Movant Chase Hamano*

## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### MDL-___ – In re Activision Blizzard, Inc., Litigation

### SCHEDULE OF ACTIONS

| | Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|---|
| 1 | **Plaintiff:** Mohamad Al Labade **Defendants:** Activision Blizzard, Inc., Robert A. Kotick, Spencer Neumann, Collister Johnson | C.D. California (Western Division – Los Angeles) | 2:19-cv-00423-R-AFM | Manuel L. Real |
| 2 | **Plaintiff:** Chase Hamano **Defendants:** Activision Blizzard, Inc., Robert A. Kotick, Spencer Neumann, Collister Johnson | N.D. Illinois (Chicago) | 1:19-cv-01741 | Jorge L. Alonso |
| 3 | **Plaintiff:** Benjamin Winckler **Defendants:** Activision Blizzard, Inc., Robert A. Kotick, Collister Johnson, Spencer Neumann | S.D. New York (Foley Square) | 1:19-cv-02095-LAP | Loretta A. Preska |

**BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re Activision Blizzard, Inc. Securities Litigation | MDL Docket No. _____ |

## PROOF OF SERVICE

I hereby certify that a copy of the foregoing Motion, Brief, Schedule of Actions,

accompanying documents and this Certificate of Service was served by email unless otherwise

noted on March 14, 2019, to the following:

| | |
|---|---|
| Clerk of the Panel United States Judicial Panel on Multidistrict Litigation Thurgood Marshall Federal Judiciary Building One Columbus Circle, NE, Room G-255, North Lobby Washington, DC 20002-8041 | FEDEX: Overnight Delivery |
| Clerk, Central District California Edward R. Roybal Federal Building and United States Courthouse 255 East Temple Street Los Angeles, CA 90012-3332 | FEDEX: Overnight Delivery |
| Clerk, Northern District Illinois United States Courthouse 219 South Dearborn Street Chicago, IL 60604 | FEDEX: Overnight Delivery |
| Clerk, Southern District New York 500 Pearl Street New York, NY 10007-1312 | FEDEX: Overnight Delivery |
| William Scott Holleman | Counsel for Plaintiff: Benjamin Winckler |

| | |
|---|---|
| Johnson & Fistel, LLP<br>99 Madison Avenue 5th Floor<br>New York, NY 10016<br>Tel. (212) 802-1486<br>Fax. (212) 602-1592<br>Email: ScottH@johnsonfistel.com | |
| Garam Choe<br>Johnson & Fistel, LLP<br>99 Madison Avenue 5th Floor<br>New York, NY 10016<br>Tel. (212) 802-1486<br>Fax. (212) 602-1592<br>Email: GaramC@johnsonfistel.com | Counsel for Plaintiff: Benjamin Winckler |
| Michael Fistel, Jr.<br>40 Powder Springs Street<br>Marietta, GA 30064<br>Tel. (470) 632-6000<br>Fax. (770) 200-3101<br>Email: MichaelF@johnsonfistel.com | Counsel for Plaintiff: Benjamin Winckler |
| Jennifer Pafiti<br>Pomerantz LLP<br>1100 Glendon Avenue 15th Floor<br>Los Angeles, CA 90024<br>Tel. (858) 532-6499<br>Email: jpafiti@pomlaw.com | Counsel for Plaintiff: Mohamad Al Labade |
| Jeremy A Lieberman<br>Pomerantz LLP<br>600 Third Avenue 20th Floor<br>New York, NY 10016<br>Tel. (212) 661-1100<br>Fax. (917) 463-1044<br>Email: jalieberman@pomlaw.com | Counsel for Plaintiff: Mohamad Al Labade |
| Patrick V. Dahlstrom<br>Pomerantz LLP<br>Ten South La Salle Street, Suite 3505<br>Chicago, Illinois 60603<br>Tel. (312) 377-1181<br>Fax. (312) 377-1184<br>E-mail: pdahlstrom@pomlaw.com | Counsel for Plaintiff: Mohamad Al Labade |
| J. Alexander Hood<br>Pomerantz LLP<br>600 Third Avenue 20th Floor<br>New York, NY 10016<br>Tel. (212) 661-1100<br>Fax. (917) 463-1044<br>Email: ahood@pomlaw.com | Counsel for Plaintiff: Mohamad Al Labade |

| Jonathan D. Lindenfeld<br>Pomerantz LLP<br>600 Third Avenue 20th Floor<br>New York, NY 10016<br>Tel. (212) 661-1100<br>Fax. (917) 463-1044<br>Email: JLindenfeld@pomlaw.com | Counsel for Plaintiff: Mohamad Al Labade |
|---|---|
| Koji Fukumura<br>Cooley LLP<br>4401 Eastgate Mall<br>San Diego, CA 92121-1909<br>Tel. 858 550 6008<br>Fax. 858 550 6420<br>Email: KFukumura@cooley.com | Counsel for Defendants:<br>Activision Blizzard, Robert A Kotick,<br>Spencer Neumann, and Collister Johnson |
| Ryan Blair<br>Cooley LLP<br>4401 Eastgate Mall<br>San Diego, CA 92121-1909<br>Tel. 858 550 6047<br>Fax. 858 550 6420<br>Email: RBlair@cooley.com | Counsel for Defendants:<br>Activision Blizzard, Robert A Kotick,<br>Spencer Neumann, and Collister Johnson |

## APPENDIX OF DOCKETS AND COMPLAINTS

| | |
|---|---|
| A | Docket Report for *Hamano v. Activision Blizzard, Inc. et al.*, No. 1:19-cv-01741 (N.D. Ill.) |
| B | Complaint filed in *Hamano v. Activision Blizzard, Inc. et al.*, No. 1:19-cv-01741 (N.D. Ill.) |
| C | Docket Report for *Mohamad Labade v. Activision Blizzard, Inc. et al*, No. 2:19-cv-00423-R-AFM (C.D. Cal.) |
| D | Complaint filed in *Mohamad Labade v. Activision Blizzard, Inc. et al*, No. 2:19-cv-00423-R-AFM (C.D. Cal.) |
| E | Docket Report for *Winckler v. Activision Blizzard, Inc. et al*, No. 1:19-cv-02095-LAP (S.D.N.Y.) |
| F | Complaint filed in *Winckler v. Activision Blizzard, Inc. et al*, No. 1:19-cv-02095-LAP (S.D.N.Y.) |



CM/ECF LIVE, Ver 6.2.2 - U.S. District Court... Case 1:19-cv-01741 Document #: 28 Filed: 03/18/19 Page 20 of 98 PageID #:695 1051058-L_1_0-1

Case Pending No. 13    Document 1-5    Filed 03/14/19    Page 2 of 3

CUMMINGS,MIDP

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 6.2.2 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:19-cv-01741

Hamano v. Activision Blizzard, Inc. et al
Assigned to: Honorable Jorge L. Alonso
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 03/12/2019
Jury Demand: Plaintiff
Nature of Suit: 850 Securities/Commodities
Jurisdiction: Federal Question

**Plaintiff**

**Chase Hamano**
*Individually and on behalf of all others
similarly situated,*

represented by **Marvin Alan Miller**
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400
Email: Mmiller@millerlawllc.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Activision Blizzard, Inc.**

**Defendant**

**Robert A. Kotick**

**Defendant**

**Spencer Neumann**

**Defendant**

**Collister Johnson**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/12/2019 | 1 | COMPLAINT filed by Chase Hamano; Jury Demand. Filing fee $ 400, receipt number 0752-15585273. (Attachments: # 1 Declaration Certification of Plaintiff Pursuant to the Federal Securities Laws)(Miller, Marvin) (Entered: 03/12/2019) |
| 03/12/2019 | 2 | CIVIL Cover Sheet (Miller, Marvin) (Entered: 03/12/2019) |
| 03/12/2019 | 3 | ATTORNEY Appearance for Plaintiff Chase Hamano by Marvin Alan Miller (Miller, Marvin) (Entered: 03/12/2019) |
| 03/13/2019 | | CASE ASSIGNED to the Honorable Jorge L. Alonso. Designated as Magistrate Judge the Honorable Jeffrey Cummings. Case assignment: Random assignment. (acm) (Entered: 03/13/2019) |

| 03/13/2019 | 4 | NOTICE TO THE PARTIES - The Court is participating in the Mandatory Initial Discovery Pilot (MIDP). The key features and deadlines are set forth in this Notice which includes a link to the (MIDP) Standing Order and a Checklist for use by the parties. In cases subject to the pilot, all parties must respond to the mandatory initial discovery requests set forth in the Standing Order before initiating any further discovery in this case. Please note: The discovery obligations in the Standing Order supersede the disclosures required by Rule 26(a)(1). Any party seeking affirmative relief must serve a copy of the following documents (Notice of Mandatory Initial Discovery and the Standing Order) on each new party when the Complaint, Counterclaim, Crossclaim, or Third-Party Complaint is served. (jjr, ) (Entered: 03/13/2019) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/14/2019 10:00:51 | | |
| **PACER Login:** AFT00779:2691699:0 | **Client Code:** | activision |
| **Description:** Docket Report | **Search Criteria:** | 1:19-cv-01741 |
| **Billable Pages:** 1 | **Cost:** | 0.10 |



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHASE HAMANO, Individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | |
| ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, SPENCER NEUMANN, and COLLISTER JOHNSON, | JURY TRIAL DEMANDED |
| Defendants. | |

**CLASS ACTION COMPLAINT**
**FOR THE VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiff, Chase Hamano ("Plaintiff"), individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge and belief as to his own acts, and, as to the rest, based upon the investigation of Plaintiff's counsel, including a review of Securities and Exchange Commission ("SEC") filings of Activision Blizzard, Inc. ("Activision Blizzard" or the "Company"), press releases, and analyst reports, media reports and other publicly disclosed reports and information about the Company. Plaintiff believes that substantial additional evidentiary support exists for the Complaint's allegations after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons who purchased or otherwise acquired Activision Blizzard securities between August 2, 2018 and January 10, 2019, both dates inclusive (the "Class Period"), pursuing remedies under §§10(b) and

- 1 -

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its senior officers and directors.

2. Activision Blizzard develops and distributes content and services on video game consoles, personal computers (PC), and mobile devices. The Company's common stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "ATVI."

3. On April 29, 2010, the Company announced that it had entered, through its subsidiary Activision Publishing, Inc. ("Activision Publishing"), into an agreement with Bungie, Inc. ("Bungie"), a game developer for franchises such as *Halo*, *Myth* and *Marathon*. The agreement with Bungie gave Activision Blizzard exclusive rights to publish and distribute video games developed by Bungie for the next ten years.

4. Activision Blizzard and Bungie's partnership produced the commercially successful *Destiny* franchise, a series of science fiction-themed first-person shooter games. In September 2014, Activision Blizzard released *Destiny*, the first installment in the franchise, developed by Bungie. Activision Blizzard announced that the Company sold $500 million of *Destiny* into retail stores on the first day of its release, making the game the largest video game franchise launch in history at that time. Over the following two years, Bungie and Activision Blizzard developed and released four expansions for *Destiny*. In September 2017, Activision Blizzard released a full sequel, *Destiny 2*. On September 15, 2017, Activision Blizzard announced that *Destiny 2* had "surpassed the original's records for engagement and digital sales in launch week." To date, Bungie has developed and Activision Blizzard has released three expansions for *Destiny 2*.

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically,

Defendants failed to disclose the following material adverse facts: (i) that there had been a deterioration in the business relationship between Activision Blizzard and Bungie; (ii) that the termination of Activision Blizzard and Bungie's partnership was imminent, giving Bungie full publishing rights and responsibilities for the *Destiny* franchise; (iii) that the termination of the two companies' relationship would have a significant negative impact on Activision Blizzard's revenues; and (iv) that, as a result, Activision Blizzard's public statements were materially false and misleading at all relevant times.

6.    On January 10, 2019, Activision Blizzard and Bungie the surprised investors by announcing the early termination of their partnership. In a post on its website entitled "Our Destiny," Bungie stated, in relevant part:

> We have enjoyed a successful eight-year run and would like to thank Activision for their partnership on Destiny. Looking ahead, we're excited to announce plans for Activision to transfer publishing rights for Destiny to Bungie. With our remarkable Destiny community, we are ready to publish on our own, while Activision will increase their focus on owned IP projects.
>
> The planned transition process is already underway in its early stages, with Bungie and Activision both committed to making sure the handoff is as seamless as possible.

7.    That same day, in an SEC filing, Activision Blizzard stated that Bungie "would assume full publishing rights and responsibilities for the Destiny franchise. Going forward, Bungie will own and develop the franchise."

8.    In reaction to these announcements, the Company's stock price fell $4.81 per share, or 9.37%, to close at $46.54 on January 11, 2019.

9.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

- 3 -

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and §27 of the Exchange Act.

12.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Activision Blizzard transacts business in this District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Activision Blizzard's securities at artificially inflated prices during the Class Period and has been damaged thereby.

15.     Defendant Activision Blizzard is a video game developer and publisher. Activision Blizzard's common stock trades on the NASDAQ under the ticker symbol "ATVI".

16.     Defendant Robert A. Kotick ("Kotick") served at all relevant times as the Company's Chief Executive Officer ("CEO") and Director.

17.     Defendant Spencer Neumann served as the Company's Chief Financial Officer ("CFO"), until he was terminated by the Company at the end of 2018.

18.     Defendant Collister Johnson ("Johnson") served at all relevant times as President and Chief Operating Officer ("COO") of Activision Blizzard.

19.     The Defendants referenced above in ¶¶16-18 are sometimes referred to herein collectively as the "Individual Defendants."

20.     The Individual Defendants, in part because of their positions with Activision Blizzard, possessed the power and authority to control the contents of the Company's reports to the SEC, as well as its press releases and presentations to securities analysts, money and portfolio managers and investors, *i.e.*, the market. Each Individual Defendant made or controlled the public statements alleged herein to be false or misleading, and had the ability and opportunity to prevent those statements from being disseminated to the market or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public, and that the positive representations which were being made were then materially false and/or misleading.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Activision Blizzard develops and distributes content and services on video game consoles, personal computers (PC), and mobile devices. The Company was formed in July 2008 as the result of a merger between Activision, Inc. and Vivendi Games, the holding company for the video game studio Blizzard Entertainment.

22.     Activision Blizzard is headquartered in Santa Monica, California. The Company's common stock trades on the NASDAQ under the ticker symbol "ATVI."

23.     On April 29, 2010, the Company announced its entry, through its wholly owned subsidiary Activision Publishing, into an agreement with Bungie, the developer of blockbuster game franchises including *Halo*, *Myth* and *Marathon*. The agreement with Bungie gave Activision

Blizzard exclusive rights to publish and distribute video games developed by Bungie for the next ten years.

24.     The partnership between Activision Blizzard and Bungie yielded the commercially successful *Destiny* franchise, a series of science fiction-themed first-person shooter games. In September 2014, Activision Blizzard and Bungie released *Destiny*, the first installment in the franchise. The game was an instant success. Activision Blizzard announced that the Company had sold $500 million of *Destiny* into retail stores on the first day of its release, making the game the largest video game franchise launch in history at that time. Over the following two years, Bungie developed and Activision Blizzard released four expansions for *Destiny*. In September 2017, Activision Blizzard released a full sequel, *Destiny 2*. On September 15, 2017, Activision Blizzard announced that *Destiny 2* had "surpassed the original's records for engagement and digital sales in launch week." Subsequently, Bungie has developed and Activision Blizzard has released three expansions for *Destiny 2*.

**Defendants' Materially False and Misleading Statements During the Class Period**

25.     The Class Period begins on August 2, 2018. On that date, Activision Blizzard issued a press release announcing the Company's financial and operating results for the second quarter of 2018 (the "Q2 2018 8-K"). In the Q2 2018 8-K, Activision Blizzard touted successful user engagement metrics for the *Destiny* franchise, stating, in relevant part:

> During the quarter, Destiny 2 released its second expansion, Warmind, with higher attach rates than Destiny 1's second expansion, and Destiny 2 [Monthly Active Users] grew quarter-over-quarter.

26.     On August 2, 2018, Activision Blizzard also filed a quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2018 (the "Q2 2018 10-Q"). The Q2 2018 10-Q listed *Destiny* among the Company's "key product franchises," and informed investors that "[w]e have . . . established a long-term alliance with Bungie to publish its game universe, Destiny."

27.     The Q2 2018 10-Q contained signed certifications pursuant to the Sarbanes-Oxley

Act of 2002 ("SOX") by Defendants Kotick and Neumann, which stated that "[t]he information

contained in the [Q2 2018 10-Q] fairly presents, in all material respects, the financial condition

and results of operations of the Company."

28.     On August 2, 2018, Activision Blizzard also held its Q2 2018 Earnings Call. In his

prepared remarks, Defendant Johnson state in relevant part:

> Turning to Destiny, Bungie and Activision continue to make updates in engaging
> content for Destiny's fans. Destiny 2's second expansion, Warmind, was released
> in Q2 with a higher attach rate than Destiny 1's second expansion, and Destiny 2
> monthly active users grew quarter-over-quarter.
>
> Now the next big step in the franchise is Forsaken, the major expansion coming out
> in September. *We think this release will drive strong community engagement,
> particularly around the innovation in Gambit, a new competitive co-op mode
> which we think could be transformative for the way people play in first-person
> action games.*
>
> *     *     *
>
> *Activision had record second quarter in-game net bookings driven by* Call of
> Duty: World War II, Black Ops 3 and *Destiny 2.*

(Emphasis added.)

29.     After Defendant Johnson finished his prepared remarks, an analyst pressed him for

"an update on the Destiny franchise and just your expectations for the major expansion this fall."

Defendant Johnson responded in pertinent part:

> As you'll remember, we've talked a lot about listening to the Destiny community
> to provide a deeper ongoing experience, more engaging moment to moment
> gameplay and a series of updates with better rewards in the ongoing live game.
> And the team at Bungie and the team here at Activision have made a lot of strides
> in doing that, particularly the last two quarters, with the ongoing improvements to
> the end game and the overall gameplay experience.
>
> But in particular, with the Warmind expansion in May, that really showed us the
> ability to evolve the game and regrow engagement and regrow users. *And now,
> that community, that's the most positive place since Destiny 2 launched last
> September. And so, now we have this big step with the launch of Forsaken which
> happens next month.*

> The encouraging part is players have had a great response so far with engagement
> online around the content announcement, hands-on gameplay of E3, which honestly
> led to the highest social sentiment we've seen in three years of E3; and a lot of
> excitement around Gambit, which brings this whole new way to play that's both
> cooperative and competitive between teams. *And we really do think it could be
> transformative.*
>
> *So we feel good about the content to come and the engagement we've seen in the
> community overall, and we feel really good about what Forsaken would do to
> build on that momentum. So we're excited for it, and we're in that countdown
> period now to put it in the hands of our fans.*

(Emphasis added.)

30. On September 4, 2018, the Company issued a press release announcing the
worldwide release of its *Destiny 2* expansion, *Forsaken*. The press release stated that the Company
had "plenty of surprises in store in the weeks and months ahead, and *we have been working all
year with our community to make sure Forsaken will meet their expectations*." (Emphasis
added.)

31. On November 8, 2018, Activision Blizzard issued a press release announcing its
financial and operating results for the quarter ended September 30, 2018 (the "Q3 2018 8-K"). In
the Q3 2018 8-K, Activision Blizzard again touted successful user engagement metrics for its
*Destiny* franchise, stating, in relevant part, that "Destiny MAUs grew quarter-over-quarter and
year-over-year, driven by the launch of Forsaken and reach initiatives for the base game."

32. On November 8, 2018, Activision Blizzard also filed a quarterly report with the
SEC on Form 10-Q (the "Q3 2018 10-Q"). The Q3 2018 10-Q again listed *Destiny* among the
Company's "key product franchises," and informed investors that "[w]e have . . . established a
long-term alliance with Bungie to publish its game universe, Destiny."

33. The Q3 2018 10-Q contained signed certifications pursuant to SOX by Defendants
Kotick and Neumann, stating that "[t]he information contained in the [Q3 2018 10-Q] fairly
presents, in all material respects, the financial condition and results of operations of the Company."

34. On November 8, 2018, Activision Blizzard held its Q3 2018 Earnings Call. During

the call, Defendant Johnson highlighted the Company's growth in active monthly users, which had

risen to 46 million, "driven by Destiny's expansion, Forsaken, and by new reach initiatives, which

grew Destiny monthly active users quarter on quarter and year over year."

35. When pressed specifically on the "health of the Destiny franchise" in light of recent

underperformance, Defendant Johnson failed to disclose the serious behind-the-scenes tensions

between the Company and Bungie and certainly nothing so serious that it could cause them to

prematurely terminate their partnership. To the contrary, Defendant Johnson highlighted the

purported high quality of *Destiny* content and the strength of the companies' partnership, as

reflected in the following excerpted exchange:

> Drew Crum - Stifel, Nicolaus & Co., Inc.
>
> . . . You touched on this a little bit, but maybe spend a little more time on the health of the Destiny franchise and just what you've seen in terms of engagement post the Forsaken launch. Thanks.
>
> Collister Johnson - Activision Blizzard, Inc.
>
> . . . I *guess I'd start by reiterating that Forsaken is a high-quality expansion of content into the universe. Honestly, it's the highest-quality content we've seen in the franchise to date. It really came out of Activision and Bungie working together to address community concerns post-Destiny 2 holistically. Talking to players, we knew it came from users really doing a fundamental review of how to offer a deeper end-game, greater powers and greater rewards, and engage players who seemed to be really enjoying the content. In particular, it was very well received both by reviewers and by the community, and has ongoing deepening engagement by those that are playing it.*

(Emphasis added.)

36. The statements referenced in ¶¶25-35 were materially false and misleading when

made because Defendants failed to disclose the following adverse facts, which they knew or

recklessly disregarded:

(a)    that there had been a deterioration in the business relationship between

Activision Blizzard and Bungie;

(b)    that the termination of Activision Blizzard and Bungie's partnership, giving

Bungie full publishing rights and responsibilities for the Destiny franchise, was imminent;

(c)    that the termination of the two companies' relationship would foreseeably

have a significant negative impact on Activision Blizzard's revenues; and

(d)    that, as a result, Activision Blizzard's public statements were materially

false and misleading at all relevant times.

## SUBSEQUENT EVENTS

37.    On January 10, 2019, Activision Blizzard and Bungie shocked the market by

abruptly announcing the end of their business relationship. In a post on its website entitled "Our

Destiny," Bungie stated, in relevant part:

> We have enjoyed a successful eight-year run and would like to thank Activision for
> their partnership on Destiny. Looking ahead, we're excited to announce plans for
> Activision to transfer publishing rights for Destiny to Bungie. With our remarkable
> Destiny community, we are ready to publish on our own, while Activision will
> increase their focus on owned IP projects.
>
> The planned transition process is already underway in its early stages, with Bungie
> and Activision both committed to making sure the handoff is as seamless as
> possible.

38.    That same day, in an SEC filing, Activision Blizzard stated that Bungie "would

assume full publishing rights and responsibilities for the Destiny franchise. Going forward, Bungie

will own and develop the franchise."

39.    Following these announcements, the Company's stock price fell $4.81 per share, or

9.37%, to close at $46.54 on January 11, 2019.

- 10 -

40.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline
in the market value of the Company's securities, Plaintiff and other Class members have suffered
significant economic losses and damages under the federal securities laws.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil
Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise
acquired Activision Blizzard securities during the Class Period and were damaged thereby (the
"Class"). Excluded from the Class are Defendants, their agents, officers and directors, and any
entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is
impracticable. Throughout the Class Period, Activision Blizzard securities were actively traded
on the NASDAQ. As of February 21, 2019, the number of shares of Activision Blizzard's common
stock outstanding was over 763 million. While the exact number of Class members is unknown
to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff
believes that there are hundreds or thousands of members in the proposed Class. Record owners
and other members of the Class may be identified from records maintained by Activision Blizzard
or its transfer agent and may be notified of the pendency of this action by mail, using the form of
notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all
members of the Class are similarly affected by Defendants' wrongful conduct in violation of
federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class
and has retained counsel competent and experienced in class and securities litigation.

- 11 -

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated the federal securities laws as alleged herein;

(b)     whether the prices of Activision Blizzard securities were artificially inflated and/or maintained during the Class Period; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## APPLICABILITY OF PRESUMPTION OF RELIANCE – FRAUD-ON-THE-MARKET DOCTRINE AND *AFFILIATED UTE* ALLEGATIONS

47.     Plaintiff is entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated in substantial part upon material omissions of fact that Defendants had a duty to disclose.

48.     In the alternative, Plaintiff is entitled to a presumption of reliance on Defendants' material misrepresentations and omissions pursuant to the fraud-on-the-market doctrine because, at all relevant times, the market for Activision Blizzard securities was an efficient market for the following reasons, among others:

- 12 -

(a)     Activision Blizzard securities were actively traded on the NASDAQ, a highly efficient, electronic stock market;

(b)     As a regulated issuer, Activision Blizzard filed periodic public reports with the SEC;

(c)     Activision Blizzard was followed by numerous securities analysts; and

(d)     Activision Blizzard regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

## NO SAFE HARBOR

49.     The statutory safe harbor applicable to forward-looking statements under certain circumstances does not apply to any of the false and misleading statements pled in this complaint.

50.     Either the statements complained of herein were not forward-looking statements, but rather were historical statements or statements of purportedly current facts and conditions at the time the statements were made, or to the extent there were any forward-looking statements, Defendants' verbal "Safe Harbor" warnings accompanying their oral forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

51.     To the extent that any of the false and misleading statements alleged herein can be construed as forward-looking, those statements were not accompanied by meaningful cautionary language identifying important facts that could cause actual results to differ materially from those in the statements.

52.     To the extent that any of the false and misleading statements alleged herein can be construed as forward-looking, Defendants are liable for those false or misleading statements because, at the time each such statement was made, the speaker knew the forward-looking

- 13 -

statement was false or misleading, and the forward-looking statement was authorized and/or approved by an executive officer of Activision Blizzard who knew that the forward-looking statement was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## COUNT I
### (Violations of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

53.     Plaintiff incorporates the foregoing paragraphs by reference.

54.     Defendants each disseminated or approved the false or misleading statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes and artifices to defraud;

(b)     Made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff in connection with his purchases of Activision Blizzard securities.

56.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Activision Blizzard securities. They would not

- 14 -

have purchased Activision Blizzard securities at the price paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT II
### (Violations of §20(a) of the Exchange Act
### Against the Individual Defendants)

57.     Plaintiff incorporates the foregoing paragraphs by reference.

58.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Activision Blizzard disseminated in the marketplace during the Class Period concerning Activision Blizzard's results of operations.     Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Activision Blizzard to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of Activision Blizzard within the meaning of §20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Activision Blizzard securities.

59.     Each of the Individual Defendants, therefore, acted as a controlling person of Activision Blizzard.  By reason of their senior management positions and/or being directors of Activision Blizzard, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Activision Blizzard to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Activision Blizzard and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

- 15 -

60.     By reason of the above conduct, the Individual Defendants are liable pursuant to

§20(a) of the Exchange Act for the violations committed by Activision Blizzard.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule

23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason

of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-

judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

DATED: March 12, 2019                           Respectfully Submitted,

                                                By:/s/ Marvin A. Miller
                                                Marvin A. Miller
                                                Andrew Szot
                                                **MILLER LAW LLC**
                                                115 S. LaSalle Street, Suite 2910
                                                Chicago, Illinois 60603
                                                Tel. (312) 332-3400
                                                Fax. (312) 676-2676
                                                mmiller@millerlawllc.com
                                                aszot@millerlawllc.com


                                                Jeffrey S. Abraham
                                                **ABRAHAM, FRUCHTER & TWERSKY, LLP**
                                                One Penn Plaza, Suite 2805
                                                New York, New York 10119
                                                Tel. (212) 279-5050
                                                Fax. (212) 279-3655
                                                JAbraham@aftlaw.com

- 16 -



CM/ECF - California Central District 1:19-cv-01741 Document #: 28 Filed: 03/18/19 Page 41 of 96 PageID #:716 0694835-L_1_0-1

Case Pending No. 13   Document 1-7   Filed 03/14/19   Page 2 of 4

ACCO,(AFMx),DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
### CIVIL DOCKET FOR CASE #: 2:19-cv-00423-R-AFM

Mohamad Labade v. Activision Blizzard, Inc. et al
Assigned to: Judge Manuel L. Real
Referred to: Magistrate Judge Alexander F. MacKinnon
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 01/18/2019
Jury Demand: Plaintiff
Nature of Suit: 850 Securities/Commodities
Jurisdiction: Federal Question

## Plaintiff

**Mohamad Al Labade**
*Individually and On Behalf of All Others
Similarly Situated*

represented by **Jennifer Pafiti**
Pomerantz LLP
1100 Glendon Avenue 15th Floor
Los Angeles, CA 90024
818-532-6499
Fax: 917-463-1044
Email: jpafiti@pomlaw.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Jeremy A Lieberman**
Pomerantz LLP
600 Third Avenue 20th Floor
New York, NY 10016
212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
*PRO HAC VICE
ATTORNEY TO BE NOTICED*

V.

## Defendant

**Activision Blizzard, Inc.**

## Defendant

**Robert A. Kotick**

## Defendant

**Spencer Neumann**

## Defendant

**Collister Johnson**

| Date Filed | # | Docket Text |
|---|---|---|

CM/ECF - California Central District 1:19-cv-01741 Document #: 28 Filed 03/18/19 Page 42 of 98 PageID #:074 30694835-L_1_0-1

Case Pending No. 13   Document 1-7   Filed 03/14/19   Page 3 of 4

| 01/18/2019 | 1 | COMPLAINT Receipt No: 0973-23068651 - Fee: $400, filed by Plaintiff Mohamad Al Labade. (Attorney Jennifer Pafiti added to party Mohamad Al Labade(pty:pla))(Pafiti, Jennifer) (Entered: 01/18/2019) |
|---|---|---|
| 01/18/2019 | 2 | CIVIL COVER SHEET filed by Plaintiff Mohamad Al Labade. (Pafiti, Jennifer) (Entered: 01/18/2019) |
| 01/18/2019 | 3 | Request for Clerk to Issue Subpoena filed by Plaintiff Mohamad Al Labade. (Pafiti, Jennifer) (Entered: 01/18/2019) |
| 01/18/2019 | 4 | CERTIFICATE of Interested Parties filed by Plaintiff Mohamad Al Labade. (Pafiti, Jennifer) (Entered: 01/18/2019) |
| 01/22/2019 | 5 | NOTICE OF ASSIGNMENT to District Judge Manuel L. Real and Magistrate Judge Alexander F. MacKinnon. (ghap) (Entered: 01/22/2019) |
| 01/22/2019 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (ghap) (Entered: 01/22/2019) |
| 01/22/2019 | 7 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendants Activision Blizzard, Inc., Collister Johnson, Robert A. Kotick, Spencer Neumann. (ghap) (Entered: 01/22/2019) |
| 01/22/2019 | 8 | NOTICE OF DEFICIENCIES in Attorney Case Opening RE: Subpoena Request (AO 88) 3. The following error(s) was found: Other error(s) with document(s): Incorrect event selected. Correct event to be used is Summons Request. You need not take any action in response to this notice unless and until the Court directs you to do so. (ghap) (Entered: 01/22/2019) |
| 01/22/2019 | 9 | NOTICE OF CLERICAL ERROR: Due to clerical error Re: Notice to Parties of Court-Directed ADR Program (ADR-8) - optional html form 6. Document number 6 due to clerical error. Notice to Parties of Court-Directed ADR Program was issued in error by the docket clerk. (ghap) (Entered: 01/22/2019) |
| 01/23/2019 | 10 | ORDER RE: NOTICE TO COUNSEL upon filing of the complaint by Judge Manuel L. Real. READ CAREFULLY - FAILURE TO COMPLY MAY LEAD TO SANCTIONS. SEE ORDER FOR DETAILS. (cch) (Entered: 01/23/2019) |
| 01/28/2019 | 11 | APPLICATION of Non-Resident Attorney Jeremy A. Lieberman to Appear Pro Hac Vice on behalf of Plaintiff Mohamad Al Labade (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-23108482) filed by Plaintiff Mohamad Al Labade. (Attachments: # 1 Proposed Order, # 2 Supplement Certificates of Good Standing) (Pafiti, Jennifer) (Entered: 01/28/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/14/2019 07:58:53 | | | |
| PACER Login: | AFT00779:2691699:0 | Client Code: | activision |
| Description: | Docket Report | Search Criteria: | 2:19-cv-00423-R-AFM End date: 3/14/2019 |

| Billable Pages: | 2 | Cost: | 0.20 |



1 **POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
2 1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
3 Telephone: (818) 532-6499
4 E-mail: jpafiti@pomlaw.com

5
**Attorney for Plaintiff**
6

7 **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
8

| | |
|---|---|
| 9 MOHAMAD AL LABADE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, SPENCER NEUMANN, and COLLISTER JOHNSON,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

20 **CLASS ACTION COMPLAINT**

21 Plaintiff Mohamad Al Labade ("Plaintiff"), individually and on behalf of all other
22
23 persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint
24 against Defendants, alleges the following based upon personal knowledge as to Plaintiff
25 and Plaintiff's own acts, and information and belief as to all other matters, based upon,
26
27 *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which
28

included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Activision Blizzard, Inc. ("Activision Blizzard" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.  This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Activision Blizzard securities between August 2, 2018 and January 10, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.  Activision Blizzard develops and distributes content and services on video game consoles, personal computers (PC), and mobile devices. The Company is headquartered in Santa Monica, California, and its common stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "ATVI".

2

3.    On April 29, 2010, the Company announced its entry, through its wholly owned subsidiary Activision Publishing, Inc. ("Activision Publishing"), into an agreement with Bungie, Inc. ("Bungie"), the developer of blockbuster game franchises including *Halo*, *Myth* and *Marathon*. The agreement with Bungie gave Activision Blizzard exclusive rights to publish and distribute video games developed by Bungie for the next ten years.

4.    The partnership between Activision Blizzard and Bungie yielded the commercially successful *Destiny* franchise, a series of science fiction-themed video games. In September 2014, Activision Blizzard released *Destiny*, the first installment in the franchise, developed by Bungie. Activision Blizzard announced that the Company sold $500 million of *Destiny* into retail stores and first parties worldwide on the first day of its release, making the game the largest video game franchise launch in history at that time. Over the following two years, Bungie developed and Activision Blizzard released four expansions for *Destiny*. In September 2017, Activision Blizzard released a full sequel, *Destiny 2*. On September 15, 2017, Activision Blizzard announced that *Destiny 2* had "surpassed the original's records for engagement and digital sales in launch week." To date, Bungie has developed and Activision Blizzard has released three expansions for *Destiny 2*.

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance

3

policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the termination of Activision Blizzard and Bungie's partnership, giving Bungie full publishing rights and responsibilities for the *Destiny* franchise, was imminent; (ii) the termination of the two companies' relationship would foreseeably have a significant negative impact on Activision Blizzard's revenues; and (iii) as a result, Activision Blizzard's public statements were materially false and misleading at all relevant times.

6.     On January 10, 2019, Activision Blizzard and Bungie announced the end of their business relationship. In a post on its website entitled "Our Destiny", Bungie stated, in relevant part:

> We have enjoyed a successful eight-year run and would like to thank Activision for their partnership on Destiny. Looking ahead, we're excited to announce plans for Activision to transfer publishing rights for Destiny to Bungie. With our remarkable Destiny community, we are ready to publish on our own, while Activision will increase their focus on owned IP projects.
>
> ***The planned transition process is already underway in its early stages***, with Bungie and Activision both committed to making sure the handoff is as seamless as possible.

(Emphasis added.)

7.     That same day, in an SEC filing, Activision Blizzard stated that Bungie "would assume full publishing rights and responsibilities for the Destiny franchise. Going forward, Bungie will own and develop the franchise."

4

8. Following these announcements, the Company's stock price fell \$4.81 per share, or 9.37%, to close at \$46.54 on January 11, 2019.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Activision Blizzard's principal executive offices are located within this Judicial District.

13. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

5

## PARTIES

14.    Plaintiff, as set forth in the attached Certification, acquired Activision Blizzard's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.    Defendant Activision Blizzard is a Delaware corporation with principal executive offices located at 3100 Ocean Park Boulevard, Santa Monica, California 90405. Activision Blizzard's common stock trades on the NASDAQ under the ticker symbol "ATVI".

16.    Defendant Robert A. Kotick ("Kotick") served at all relevant times as the Company's Chief Executive Officer ("CEO") and Director.

17.    Defendant Spencer Neumann served at all relevant times as the Company's Chief Financial Officer ("CFO").

18.    Defendant Collister Johnson ("Johnson") served at all relevant times as President and Chief Operating Officer ("COO") of Activision Blizzard.

19.    The Defendants referenced above in ¶¶ 16-18 are sometimes referred to herein collectively as the "Individual Defendants."

20.    The Individual Defendants possessed the power and authority to control the contents of Activision Blizzard's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their

6

issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.    Activision Blizzard develops and distributes content and services on video game consoles, personal computers (PC), and mobile devices. The Company was formed in July 2008 as the result of a merger between Activision, Inc. and Vivendi Games, the holding company for the video game studio Blizzard Entertainment.

22.    Activision Blizzard is headquartered in Santa Monica, California. The Company's common stock trades on the NASDAQ under the ticker symbol "ATVI".

23.    On April 29, 2010, the Company announced its entry, through its wholly owned subsidiary Activision Publishing, into an agreement with Bungie, the developer of blockbuster game franchises including *Halo, Myth* and *Marathon*. The agreement with Bungie gave Activision Blizzard exclusive rights to publish and distribute video games developed by Bungie for the next ten years.

7

24.     The partnership between Activision Blizzard and Bungee yielded the commercially successful *Destiny* franchise, a series of science fiction-themed video games. In September 2014, Activision Blizzard released *Destiny*, the first installment in the franchise, developed by Bungie. Activision Blizzard announced that the Company sold \$500 million of *Destiny* into retail stores and first parties worldwide on the first day of its release, making the game the largest video game franchise launch in history at that time. Over the following two years, Bungie developed and Activision Blizzard released four expansions for *Destiny*. In September 2017, Activision Blizzard released a full sequel, *Destiny 2*. On September 15, 2017, Activision Blizzard announced that *Destiny 2* had "surpassed the original's records for engagement and digital sales in launch week." To date, Bungie has developed and Activision Blizzard has released three expansions for *Destiny 2*.

**Materially False and Misleading Statements Issued During the Class Period**

25.     The Class Period begins on August 2, 2018, when Activision Blizzard issued a press release announcing the Company's financial and operating results for the second quarter of 2018 (the "Q2 2018 8-K"). In the Q2 2018 8-K, Activision Blizzard touted successful user engagement metrics for the *Destiny* franchise, stating, in relevant part:

> During the quarter, *Destiny 2* released its second expansion, *Warmind*, with higher attach rates than *Destiny 1's* second expansion, and *Destiny 2* [Monthly Active Users] grew quarter-over-quarter.

8

26. On August 2, 2018, Activision Blizzard also filed a quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2018 (the "Q2 2018 10-Q"). The Q2 2018 10-Q listed *Destiny* among the Company's "key product franchises", and informed investors that "[w]e have . . . established a long-term alliance with Bungie to publish its game universe, Destiny."

27. The Q2 2018 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Kotick and Neumann, stating that "[t]he information contained in the [Q2 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

28. On August 2, 2018, Activision Blizzard also held its Q2 2018 Earnings Call. On that call, Defendant Johnson state in relevant part:

> Turning to *Destiny*, Bungie and Activision continue to make updates in engaging content for *Destiny's* fans. *Destiny 2's* second expansion, *Warmind*, was released in Q2 with a higher attach rate than *Destiny 1's* second expansion, and *Destiny 2* monthly active users grew quarter-over-quarter.

> Now the next big step in the franchise is *Forsaken*, the major expansion coming out in September. We think this release will drive strong community engagement, particularly around the innovation in Gambit, a new competitive co-op mode which we think could be transformative for the way people play in first-person action games.

29. After Defendant Johnson finished his prepared remarks, an analyst pressed him for "an update on the *Destiny* franchise and just your expectations for the major expansion this fall":

9

**Collister Johnson - Activision Blizzard, Inc.**

. . . As you'll remember, we've talked a lot about listening to the *Destiny* community to provide a deeper ongoing experience, more engaging moment to moment gameplay and a series of updates with better rewards in the ongoing live game. *And the team at Bungie and the team here at Activision have made a lot of strides in doing that, particularly the last two quarters, with the ongoing improvements to the end game and the overall gameplay experience.*

But in particular, with the *Warmind* expansion in May, that really showed us the ability to evolve the game and regrow engagement and regrow users. And now, that community, that's the most positive place since *Destiny 2* launched last September. And so, now we have this big step with the launch of *Forsaken* which happens next month.

The encouraging part is players have had a great response so far with engagement online around the content announcement, hands-on gameplay of E3, which honestly led to the highest social sentiment we've seen in three years of E3; and a lot of excitement around Gambit, which brings this whole new way to play that's both cooperative and competitive between teams. And we really do think it could be transformative.

So we feel good about the content to come and the engagement we've seen in the community overall, and we feel really good about what Forsaken would do to build on that momentum. So we're excited for it, and we're in that countdown period now to put it in the hands of our fans.

(Emphasis added.)

30.    On September 4, 2018, the Company issued a press release announcing the worldwide release of its *Destiny 2* expansion, *Forsaken*. The press release teased investors and gamers alike of "plenty of surprises in store in the weeks and months ahead, and we have been working all year with our community to make sure *Forsaken* will meet their expectations."

10

31. On November 8, 2018, Activision Blizzard issued a press release announcing its financial and operating results for the quarter ended September 30, 2018 (the "Q3 2018 8-K"). In the Q3 2018 8-K, Activision Blizzard again touted successful user engagement metrics for the *Destiny* franchise, stating, in relevant part, that "*Destiny* MAUs grew quarter-over-quarter and year-over-year, driven by the launch of Forsaken and reach initiatives for the base game."

32. On November 8, 2018, Activision Blizzard also filed a quarterly report with the SEC on Form 10-Q (the "Q3 2018 10-Q"). Again, the Q3 2018 10-Q listed *Destiny* among the Company's "key product franchises", and informed investors that "[w]e have . . . established a long-term alliance with Bungie to publish its game universe, Destiny."

33. The Q3 2018 10-Q contained signed certifications pursuant to SOX by Defendants Kotick and Neumann, stating that "[t]he information contained in the [Q3 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

34. On November 8, 2018, Activision Blizzard also held its Q3 2018 Earnings Call. During the call, Defendant Johnson touted the Company's growth in active monthly users, "driven by *Destiny's* expansion, Forsaken, and by new reach initiatives, which grew *Destiny* monthly active users quarter on quarter and year over year." After acknowledging that the release of the *Destiny 2* expansion pack *Forsaken* "did not achieve [the

11

Company's] commercial expectations", Defendant Johnson stated that "there's still work

[for the Company] to do to fully reengage the core *Destiny* fan base."

35.    When pressed specifically on the "health of the *Destiny* franchise" Defendant

Johnson failed to discuss any potential rift between the Company and Bungie which could

lead to a split of their partnership:

**Drew Crum - Stifel, Nicolaus & Co., Inc.**

*. . . You touched on this a little bit, but maybe spend a little more time on the health of the* **Destiny** *franchise* and just what you've seen in terms of engagement post the *Forsaken* launch. Thanks.

**Collister Johnson - Activision Blizzard, Inc.**
. . . I guess I'd start by reiterating that *Forsaken* is a high-quality expansion of content into the universe. Honestly, it's the highest-quality content we've seen in the franchise to date. It really came out of Activision and Bungie working together to address community concerns post-*Destiny 2* holistically. Talking to players, we knew it came from users really doing a fundamental review of how to offer a deeper end-game, greater powers and greater rewards, and engage players who seemed to be really enjoying the content. In particular, it was very well received both by reviewers and by the community, and has ongoing deepening engagement by those that are playing it.

At BlizzCon, we announced that *Destiny*, the base game is free for two weeks, meaning download it by November 18, and you get to keep the base game forever. We did that because we want the whole community loaded up and able to play it, but also because it's a live game. And once you're in it, with the ongoing features and services and content, there's really deep engagement that takes place. And part of it was also because we have not yet seen the full core reengage in *Destiny*, which has led to the underperformance against our expectations to date. Some players we think are still in wait-and-see mode. So when you're in, you're deeply engaged. If you're not, we're hoping now is the time to work and to bring players back in and to win them back.

(Emphasis added.)

36.     The statements referenced in ¶¶ 25-35 were materially false and misleading

because Defendants made false and/or misleading statements, as well as failed to disclose

material adverse facts about the Company's business, operational and compliance policies.

Specifically, Defendants made false and/or misleading statements and/or failed to disclose

that: (i) the termination of Activision Blizzard and Bungie's partnership, giving Bungie

full publishing rights and responsibilities for the *Destiny* franchise, was imminent; (ii) the

termination of the two companies' relationship would foreseeably have a significant

negative impact on Activision Blizzard's revenues; and (iii) as a result, Activision

Blizzard's public statements were materially false and misleading at all relevant times.

## The Truth Begins To Emerge

37.     On January 10, 2019, Activision Blizzard and Bungie announced the end of

their business relationship. In a post on its website entitled "Our Destiny", Bungie stated,

in relevant part:

> We have enjoyed a successful eight-year run and would like to thank
> Activision for their partnership on Destiny. Looking ahead, we're excited to
> announce plans for Activision to transfer publishing rights for Destiny to
> Bungie. With our remarkable Destiny community, we are ready to publish on
> our own, while Activision will increase their focus on owned IP projects.
>
> ***The planned transition process is already underway in its early stages***, with
> Bungie and Activision both committed to making sure the handoff is as
> seamless as possible.

(Emphasis added.)

13

38.     That same day, in an SEC filing, Activision Blizzard stated that Bungie "would assume full publishing rights and responsibilities for the Destiny franchise. Going forward, Bungie will own and develop the franchise."

39.     Following these announcements, the Company's stock price fell $4.81 per share, or 9.37%, to close at $46.54 on January 11, 2019.

40.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Activision Blizzard securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Activision Blizzard securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff

believes that there are hundreds or thousands of members in the proposed Class. Record

owners and other members of the Class may be identified from records maintained by

Activision Blizzard or its transfer agent and may be notified of the pendency of this action

by mail, using the form of notice similar to that customarily used in securities class actions.

43.   Plaintiff's claims are typical of the claims of the members of the Class as all

members of the Class are similarly affected by Defendants' wrongful conduct in violation

of federal law that is complained of herein.

44.   Plaintiff will fairly and adequately protect the interests of the members of the

Class and has retained counsel competent and experienced in class and securities litigation.

Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.   Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among

the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Activision Blizzard;

- whether the Individual Defendants caused Activision Blizzard to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Activision Blizzard securities during the Class

15

Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

47.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Activision Blizzard securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

16

- Plaintiff and members of the Class purchased, acquired and/or sold Activision Blizzard securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48.     Based upon the foregoing, Plaintiff and the members of the Class are entitled

to a presumption of reliance upon the integrity of the market.

49.     Alternatively, Plaintiff and the members of the Class are entitled to the

presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the*

*State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted

material information in their Class Period statements in violation of a duty to disclose such

information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

50.     Plaintiff repeats and reallege each and every allegation contained above as if

fully set forth herein.

51.     This Count is asserted against Defendants and is based upon Section 10(b) of

the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy

and course of conduct, pursuant to which they knowingly or recklessly engaged in acts,

transactions, practices and courses of business which operated as a fraud and deceit upon

Plaintiff and the other members of the Class; made various untrue statements of material

17

facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Activision Blizzard securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Activision Blizzard securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Activision Blizzard securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Activision Blizzard's finances and business prospects.

54. By virtue of their positions at Activision Blizzard , Defendants had actual knowledge of the materially false and misleading statements and material omissions

18

alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Activision Blizzard, the Individual Defendants had knowledge of the details of Activision Blizzard's internal affairs.

56. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Activision Blizzard. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Activision Blizzard's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Activision Blizzard securities was artificially inflated throughout the Class Period.

19

In ignorance of the adverse facts concerning Activision Blizzard's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Activision Blizzard securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57. During the Class Period, Activision Blizzard securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Activision Blizzard securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Activision Blizzard securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Activision Blizzard securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

60.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation and management of Activision Blizzard, and conducted and participated, directly and indirectly, in the conduct of Activision Blizzard's business affairs. Because of their senior positions, they knew the adverse non-public information about Activision Blizzard's misstatement of income and expenses and false financial statements.

62.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Activision Blizzard's financial condition and results of operations, and to correct promptly

any public statements issued by Activision Blizzard which had become materially false or misleading.

63.  Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Activision Blizzard disseminated in the marketplace during the Class Period concerning Activision Blizzard's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Activision Blizzard to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Activision Blizzard within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Activision Blizzard securities.

64.  Each of the Individual Defendants, therefore, acted as a controlling person of Activision Blizzard. By reason of their senior management positions and/or being directors of Activision Blizzard, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Activision Blizzard to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Activision Blizzard and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Activision Blizzard.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 18, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com
E-mail: jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

24

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _____ MOHAMAD AL LABADE _____, make this

declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities

Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Activision Blizzard, Inc. ("Activision" or the "Company"),

and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Activision securities at the direction of plaintiffs counsel, or in order

to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired Activision securities during the class period, including providing testimony at deposition and trial, if

necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Activision

securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed ___JANUARY 16ᵗʰ 2019___
(Date)

_____
(Signature)

___MOHAMAD ALLABADE___
(Type or Print Name)

**Activision Blizzard, Inc. (ATVI)**                                    **Labade, Mohamad Al**

## List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 11/28/2018 | Purchase | 20 | $50.7500 |
| 11/16/2018 | Purchase | 5 | $51.0000 |
| 12/10/2018 | Purchase | 3 | $47.2500 |



**Query   Reports   Utilities   Help   Log Out**

ECF

# U.S. District Court
# Southern District of New York (Foley Square)
# CIVIL DOCKET FOR CASE #: 1:19-cv-02095-LAP

Winckler v. Activision Blizzard, Inc. et al
Assigned to: Judge Loretta A. Preska
Cause: 15:78j(b)ss Stockholder Suit

Date Filed: 03/06/2019
Jury Demand: Plaintiff
Nature of Suit: 850 Securities/Commodities
Jurisdiction: Federal Question

## Plaintiff

**Benjamin Winckler**
*Individually and On Behalf of All Others*
*Similarly Situated*

represented by **William Scott Holleman**
Johnson & Weaver, LLP
99 Madison Avenue 5th fl
New York, NY 10016
212-802-1486
Fax: 212-602-1592
Email: ScottH@johnsonfistel.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Activision Blizzard, Inc.**

**Defendant**

**Robert A. Kotick**

**Defendant**

**Collister Johnson**

**Defendant**

**Spencer Neumann**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/06/2019 | 1 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR** -COMPLAINT against Activision Blizzard, Inc., Collister Johnson, Robert A. Kotick. (Filing Fee $ 400.00, Receipt Number ANYSDC-16454256)Document filed by Benjamin Winckler.(Holleman, William) Modified on 3/7/2019 (dnh). (Entered: 03/06/2019) |
| 03/06/2019 | 2 | CIVIL COVER SHEET filed. (Holleman, William) (Entered: 03/06/2019) |

| 03/06/2019 | 3 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST As To -** REQUEST FOR ISSUANCE OF SUMMONS as to Activision Blizzard, Inc., Collister Johnson, Robert A. Kotick, Spencer Neumann, re: 1 Complaint. Document filed by Benjamin Winckler. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons) (Holleman, William) Modified on 3/7/2019 (dnh). (Entered: 03/06/2019) |
|---|---|---|
| 03/07/2019 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney William Scott Holleman to RE-FILE re: Document No. 1 Complaint. The filing is deficient for the following reason(s): all of the parties listed on the pleading were not entered on CM ECF; Add party Spencer Neumann. due to omitted party not all of the parties whom the pleading is against were selected. Docket the event type Add Party to Pleading found under the event list Complaints and Other Initiating Documents.. Re-file the pleading using the event type Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (dnh) (Entered: 03/07/2019) |
| 03/07/2019 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Loretta A. Preska. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges /District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (dnh) (Entered: 03/07/2019) |
| 03/07/2019 | | Magistrate Judge Kevin Nathaniel Fox is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (dnh) (Entered: 03/07/2019) |
| 03/07/2019 | | Case Designated ECF. (dnh) (Entered: 03/07/2019) |
| 03/07/2019 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney William Scott Holleman to RE-FILE Document No. 3 Request for Issuance of Summons. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the issuance of summons is not correct; all of the parties as to whom the summons is being requested have not yet been added to the docket. Each Summons request must be filed as a separate event OR one summons may be requested for multiple parties by attaching a rider. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (dnh) (Entered: 03/07/2019) |
| 03/07/2019 | | ADD PARTY FOR PLEADING. Defendants/Respondents Activision Blizzard, Inc., Collister Johnson, Robert A. Kotick, Spencer Neumann added. Party added pursuant to 1 Complaint,.Document filed by Benjamin Winckler. Related document: 1 Complaint,. (Holleman, William) (Entered: 03/07/2019) |
| 03/07/2019 | 4 | COMPLAINT against Activision Blizzard, Inc., Collister Johnson, Robert A. Kotick, Spencer Neumann. Document filed by Benjamin Winckler.(Holleman, William) (Entered: 03/07/2019) |

| 03/07/2019 | 5 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUESTED - WRONG SUMMONS FORM -** REQUEST FOR ISSUANCE OF SUMMONS as to Activision Blizzard, Inc., re: 4 Complaint. Document filed by Benjamin Winckler. (Holleman, William) Modified on 3/8/2019 (dnh). (Entered: 03/07/2019) |
| 03/07/2019 | 6 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUESTED - WRONG SUMMONS FORM -** REQUEST FOR ISSUANCE OF SUMMONS as to Collister Johnson, re: 4 Complaint. Document filed by Benjamin Winckler. (Holleman, William) Modified on 3/8/2019 (dnh). (Entered: 03/07/2019) |
| 03/07/2019 | 7 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUESTED - WRONG SUMMONS FORM -** REQUEST FOR ISSUANCE OF SUMMONS as to Robert A. Kotick, re: 4 Complaint. Document filed by Benjamin Winckler. (Holleman, William) Modified on 3/8/2019 (dnh). (Entered: 03/07/2019) |
| 03/07/2019 | 8 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUESTED - WRONG SUMMONS FORM -** REQUEST FOR ISSUANCE OF SUMMONS as to Spencer Neumann, re: 4 Complaint. Document filed by Benjamin Winckler. (Holleman, William) Modified on 3/8/2019 (dnh). (Entered: 03/07/2019) |
| 03/08/2019 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney William Scott Holleman to RE-FILE Document No. 8 Request for Issuance of Summons, 5 Request for Issuance of Summons, 6 Request for Issuance of Summons, 7 Request for Issuance of Summons,. The filing is deficient for the following reason(s): the form used for the summons is not the correct official A.O. Summons form; use form AO 440 (Rev. 06/12) Summons in a Civil Action found at http://nysd.uscourts.gov/forms.php. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (dnh)** (Entered: 03/08/2019) |
| 03/08/2019 | 9 | REQUEST FOR ISSUANCE OF SUMMONS as to Activision Blizzard, Inc., Collister Johnson, Robert A. Kotick, Spencer Neumann, re: 4 Complaint. Document filed by Benjamin Winckler. (Holleman, William) (Entered: 03/08/2019) |
| 03/11/2019 | 10 | ELECTRONIC SUMMONS ISSUED as to Activision Blizzard, Inc., Collister Johnson, Robert A. Kotick, Spencer Neumann. (dnh) (Entered: 03/11/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/14/2019 11:00:09 | | | |
| **PACER Login:** | AFT00779 | **Client Code:** | activision |
| **Description:** | Docket Report | **Search Criteria:** | 1:19-cv-02095-LAP |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
                                                    :
BENJAMIN WINCKLER, Individually and     :    Civil Action No. 1:19-cv-2095
On Behalf of All Others Similarly Situated,   :
                                                    :
                    Plaintiff,                  :    CLASS ACTION COMPLAINT
                                                    :
        v.                                        :    COMPLAINT FOR VIOLATION OF
                                                    :    FEDERAL SECURITIES LAWS
ACTIVISION BLIZZARD, INC., ROBERT A. :
KOTICK, SPENCER NEUMANN, and          :    DEMAND FOR JURY TRIAL
COLLISTER JOHNSON,                        :
                                                    :
                    Defendants.                 :
                                                    :
———————————————————————— x

Plaintiff Benjamin Winckler ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, U.S. Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Activision Blizzard, Inc. ("Activision Blizzard" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all those who purchased or otherwise acquired the Activision Blizzard securities between August 2, 2018 and January 10, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Activision Blizzard develops and distributes content and services on video game consoles, personal computers ("PC"), and mobile devices. The Company is headquartered in Santa Monica, California, and its common stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "ATVI."

3. On April 29, 2010, the Company announced its entry, through its wholly owned subsidiary Activision Publishing, Inc. ("Activision Publishing"), into an agreement with

2

Bungie, Inc. ("Bungie"), the developer of blockbuster game franchises including *Halo, Myth* and *Marathon*. The agreement with Bungie gave Activision Blizzard exclusive rights to publish and distribute video games developed by Bungie for the next ten years.

4.      The partnership between Activision Blizzard and Bungie yielded the commercially successful *Destiny* franchise, a series of science fiction-themed video games. In September 2014, Activision Blizzard released *Destiny*, the first installment in the franchise, developed by Bungie. Activision Blizzard announced that the Company sold $500 million of *Destiny* into retail stores and first parties worldwide on the first day of its release, making the game the largest video game franchise launch in history, at that time. Over the following two years, Bungie developed and Activision Blizzard released four expansions for *Destiny*. In September 2017, Activision Blizzard released a full sequel, *Destiny 2*. On September 15, 2017, Activision Blizzard announced that *Destiny 2* had "surpassed the original's records for engagement and digital sales in launch week." To date, Bungie has developed and Activision Blizzard has released three expansions for *Destiny 2*.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the termination of Activision Blizzard and Bungie's partnership, giving Bungie full publishing rights and responsibilities for the *Destiny* franchise, was imminent; (ii) the termination of the two companies' relationship would foreseeably have a significant negative impact on Activision Blizzard's revenues; and (iii) as a result, Activision Blizzard's public statements were materially false and misleading at all relevant times.

3

6. On January 10, 2019, Activision Blizzard and Bungie announced the end of their

business relationship. In a post on Bungie's website entitled "Our Destiny", Bungie stated, in

relevant part:

> We have enjoyed a successful eight-year run and would like to thank Activision for
> their partnership on Destiny. Looking ahead, we're excited to announce plans for
> Activision to transfer publishing rights for Destiny to Bungie. With our remarkable
> Destiny community, we are ready to publish on our own, while Activision will
> increase their focus on owned IP projects.
>
> *The planned transition process is already underway in its early stages*, with
> Bungie and Activision both committed to making sure the handoff is as seamless
> as possible.

(Emphasis added.)

7. That same day, in an SEC filing, Activision Blizzard stated that Bungie would

"assume full publishing rights and responsibilities for the *Destiny* franchise. Going forward,

Bungie will own and develop the franchise."

8. Following these announcements, the Company's stock price fell $4.81 per share, or

9.37%, to close at $46.54 on January 11, 2019.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline

in the market value of the Company's securities, Plaintiff and other Class members have suffered

significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the

Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the

SEC (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

4

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

13. In connection with the acts, transactions, and conduct alleged herein, Defendant transacts business in this District, and certain of the acts, practices, transactions, and courses of business constituting the violations alleged in this Complaint occurred within this Judicial District, and were effected, directly or indirectly, by making use of the means, instruments, or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of national securities exchanges. The Company is traded on the NASDAQ Global Select Market, which is headquartered in this District, and trades in the Company's securities were handled and executed by trading personnel located in this Judicial District during the period relevant to the allegations.

## PARTIES

14. Plaintiff, as set forth in the attached Certification, acquired Activision Blizzard's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15. Defendant Activision Blizzard is a Delaware corporation with principal executive offices located at 3100 Ocean Park Boulevard, Santa Monica, California 90405. Activision Blizzard's common stock trades on the NASDAQ under the ticker symbol "ATVI."

16. Defendant Robert A. Kotick ("Kotick") served at all relevant times as the Company's Chief Executive Officer ("CEO") and Director.

17.     Defendant Spencer Neumann served as the Company's Chief Financial Officer ("CFO") from the beginning of the Class Period until he was terminated on December 31, 2018.

18.     Defendant Collister Johnson ("Johnson") served at all relevant times as President and Chief Operating Officer ("COO") of Activision Blizzard.

19.     The Defendants referenced above in ¶¶ 16-18 are sometimes referred to herein collectively as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of Activision Blizzard's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Activision Blizzard develops and distributes content and services on video game consoles, personal computers ("PC"), and mobile devices. The Company was formed in July 2008 as the result of a merger between Activision, Inc. and Vivendi Games, the holding company for the video game studio Blizzard Entertainment.

22.     Activision Blizzard is headquartered in Santa Monica, California. The Company's common stock trades on the NASDAQ under the ticker symbol "ATVI."

6

23.     On April 29, 2010, the Company announced its entry, through its wholly owned subsidiary Activision Publishing, into an agreement with Bungie, the developer of blockbuster game franchises including *Halo, Myth,* and *Marathon.* The agreement with Bungie gave Activision Blizzard exclusive rights to publish and distribute video games developed by Bungie for the next ten years.

24.     The partnership between Activision Blizzard and Bungee yielded the commercially successful *Destiny* franchise, a series of science fiction-themed video games. In September 2014, Activision Blizzard released *Destiny,* the first installment in the franchise, developed by Bungie. Activision Blizzard announced that the Company sold $500 million of *Destiny* into retail stores and first parties worldwide on the first day of its release, making the game the largest video game franchise launch in history, at that time. Over the following two years, Bungie developed and Activision Blizzard released four expansions for *Destiny.* In September 2017, Activision Blizzard released a full sequel, *Destiny 2.* On September 15, 2017, Activision Blizzard announced that *Destiny 2* had "surpassed the original's records for engagement and digital sales in launch week." To date, Bungie has developed and Activision Blizzard has released three expansions for *Destiny 2.*

**Materially False and Misleading Statements Issued During the Class Period**

25.     The Class Period begins on August 2, 2018, when Activision Blizzard issued a press release announcing the Company's financial and operating results for the second quarter of 2018 (the "Q2 2018 8-K"). In the Q2 2018 8-K, Activision Blizzard touted successful user engagement metrics for the *Destiny* franchise, stating, in relevant part:

> During the quarter, *Destiny* 2 released its second expansion, *Warmind,* with higher attach rates than *Destiny 1's* second expansion, and *Destiny 2* [Monthly Active Users] grew quarter-over-quarter.

7

26. On August 2, 2018, Activision Blizzard also filed a quarterly report on Form 10-Q

with the SEC for the quarter ended June 30, 2018 (the "Q2 2018 10-Q"). The Q2 2018 10-Q listed

*Destiny* among the Company's "key product franchises", and informed investors that "[w]e have

. . . established a long-term alliance with Bungie to publish its game universe, *Destiny*."

27. The Q2 2018 10-Q contained signed certifications pursuant to the Sarbanes-Oxley

Act of 2002 ("SOX") by Defendants Kotick and Neumann, stating that "[t]he information

contained in the [Q2 2018 10-Q] fairly presents, in all material respects, the financial condition

and results of operations of the Company."

28. On August 2, 2018, Activision Blizzard also held its Q2 2018 Earnings Call. On

that call, Defendant Johnson state in relevant part:

> Turning to *Destiny*, Bungie and Activision continue to make updates and engaging
> content for *Destiny's* fans. *Destiny 2's* second expansion, *Warmind*, was released
> in Q2 with a higher attach rate than *Destiny 1's* second expansion. And *Destiny 2*
> monthly active users grew quarter-over-quarter.
>
> Now the next big step in the franchise is *Forsaken*, the major expansion coming out
> in September. We think this release will drive strong community engagement,
> particularly around the innovation in Gambit, a new competitive co-op mode, which
> we think could be transformative for the way people play in first-person action
> games.

29. After Defendant Johnson finished his prepared remarks, an analyst pressed him for

"an update on the *Destiny* franchise and just your expectations for the major expansion this fall":

> [Collister Johnson - Activision Blizzard, Inc.]
>
> As you'll remember, we've talked a lot about listening to the *Destiny* community
> to provide a deeper ongoing experience, more engaging moment-to-moment
> gameplay and a series of updates with better rewards in the ongoing live game.
> ***And the team at Bungie and the team here at Activision have made a lot of strides
> in doing that, particularly the last two quarters with the ongoing improvements
> in the end game and the overall gameplay experience.***
>
> But in particular, with the *Warmind* expansion in May, that really showed us the
> ability to evolve the game and regrow engagement and regrow users. And now, that
> community, that's the most positive place since *Destiny* 2 launched last September.

8

And so now we have this big step with the launch of Forsaken. which happens next month.

The encouraging part is players have had a great response so far with engagement online around the content announcements, hands on gameplay at E3, which honestly led to the highest social sentiment we've seen in three years at E3; and a lot of excitement around Gambit, which brings this whole new way to play that's both cooperative and competitive between teams and we really do think it can be transformative.

So we feel good about the content to come and the engagement we've seen in the community overall, and we feel really good about what Forsaken would do to build on that momentum. So we're excited for it, and we're in that countdown period now to put it in the hands of our fans.

(Emphasis added.)

30. On September 4, 2018, the Company issued a press release announcing the worldwide release of its *Destiny 2* expansion, *Forsaken.* The press release teased investors and gamers alike of "plenty of surprises in store in the weeks and months ahead, and we have been working all year with our community to make sure Forsaken will meet their expectations."

31. On November 8, 2018, Activision Blizzard issued a press release announcing its financial and operating results for the quarter ended September 30, 2018 (the "Q3 2018 8-K"). In the Q3 2018 8-K, Activision Blizzard again touted successful user engagement metrics for the *Destiny* franchise, stating, in relevant part, that "*Destiny* MAUs grew quarter-over-quarter and year-over-year, driven by the launch of Forsaken and reach initiatives for the base game."

32. On November 8, 2018, Activision Blizzard also filed a quarterly report with the SEC on Form 10-Q (the "Q3 2018 10-Q"). Again, the Q3 2018 10-Q listed *Destiny* among the Company's "key product franchises", and informed investors that "[w]e have . . . established a long-term alliance with Bungie to publish its game universe, Destiny."

33.     The Q3 2018 10-Q contained signed certifications pursuant to SOX by Defendants

Kotick and Neumann, stating that "[t]he information contained in the [Q3 2018 10-Q] fairly

presents, in all material respects, the financial condition and results of operations of the Company."

34.     On November 8, 2018, Activision Blizzard also held its Q3 2018 Earnings Call.

During the call, Defendant Johnson touted the Company's growth in active monthly users, "driven

by *Destiny*'s expansion, *Forsaken*, and by new reach initiatives, which grew *Destiny* monthly

active users quarter-on-quarter and year-over-year." After acknowledging that the release of the

*Destiny* 2 expansion pack *Forsaken* "did not achieve [the Company's] commercial expectations",

Defendant Johnson stated that "there's still work [for the Company] to do to fully re-engage the

core *Destiny* fan base."

35.     When pressed specifically on the "health of the *Destiny* franchise" Defendant

Johnson failed to discuss any potential rift between the Company and Bungie which could lead to

a split of their partnership:

> [Drew Crum - Stifel, Nicolaus & Co., Inc.]
>
> You touched on this a little bit, but maybe spend a little more time on the health of
> the *Destiny* franchise and just what you've seen in terms of engagement post the
> Forsaken launch. Thanks.
>
> [Collister Johnson - Activision Blizzard, Inc.]
>
> I guess I'd start by reiterating that *Forsaken* is a high-quality expansion of content
> into the universe. Honestly, it's the highest-quality content we've seen in the
> franchise to date. It really came out of Activision and Bungie working together to
> address community concerns post-*Destiny* 2 holistically. Talking to players, we
> knew it came from users really doing a fundamental review of how to offer a deeper
> end-game, greater powers and greater rewards, and engage players who seemed to
> be really enjoying the content. In particular, it was very well received both by
> reviewers and by the community, and has ongoing deepening engagement by those
> that are playing it.
>
> At BlizzCon, we announced that *Destiny*, the base game is free for two weeks,
> meaning download it by November 18, and you get to keep the base game forever.
> We did that because we want the whole community loaded up and able to play it,

but also because it's a live game. And once you're in, with the ongoing features and services and content, there's really deep engagement that takes place. And part of it was also because we have not yet seen the full core reengage in *Destiny*, which has led to the underperformance against our expectations to date. Some players we think are still in wait-and-see mode. So when you're in, you're deeply engaged. If you're not, we're hoping now is the time. We're working to bring players back in and win them back.

(Emphasis added.)

36.      The statements referenced in ¶¶ 25-35 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational, and compliance policies.      Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:   (i) the termination of Activision Blizzard and Bungie's partnership, giving Bungie full publishing rights and responsibilities for the *Destiny* franchise, was imminent; (ii) the termination of the two companies' relationship would foreseeably have a significant negative impact on Activision Blizzard's revenues; and (iii) as a result, Activision Blizzard's public statements were materially false and misleading at all relevant times.

## The Truth Begins To Emerge

37.      On January 10, 2019, Activision Blizzard and Bungie announced the end of their business relationship. In a post on its website entitled "Our Destiny," Bungie stated, in relevant part:

We have enjoyed a successful eight-year run and would like to thank Activision for their partnership on Destiny. Looking ahead, we're excited to announce plans for Activision to transfer publishing rights for Destiny to Bungie. With our remarkable Destiny community, we are ready to publish on our own, while Activision will increase their focus on owned IP projects.

*The planned transition process is already underway in its early stages,* with Bungie and Activision both committed to making sure the handoff is as seamless as possible.

(Emphasis added.)

38.     That same day, in an SEC filing, Activision Blizzard stated that Bungie would "assume full publishing rights and responsibilities for the Destiny franchise. Going forward, Bungie will own and develop the franchise."

39.     Following these announcements, the Company's stock price fell $4.81 per share, or 9.37%, to close at $46.54 on January 11, 2019.

40.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Activision Blizzard securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Activision Blizzard securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Activision Blizzard or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

12

43.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Activision Blizzard;

- whether the Individual Defendants caused Activision Blizzard to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Activision Blizzard securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

13

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

47. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Activision Blizzard securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Activision Blizzard securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

14

*United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

50.     Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

51.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Activision Blizzard securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Activision Blizzard securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.     Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly

15

and annual reports, SEC filings, press releases, and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Activision Blizzard securities. Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Activision Blizzard's finances and business prospects.

54.     By virtue of their positions at Activision Blizzard, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Activision Blizzard, the Individual Defendants had knowledge of the details of Activision Blizzard's internal affairs.

56.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Activision Blizzard. As officers and/or directors of a publicly-held company, the Individual

Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Activision Blizzard's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of Activision Blizzard securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Activision Blizzard's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Activision Blizzard securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57.     During the Class Period, Activision Blizzard securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Activision Blizzard securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Activision Blizzard securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Activision Blizzard securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

17

58.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

60.    Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.    During the Class Period, the Individual Defendants participated in the operation and management of Activision Blizzard, and conducted and participated, directly and indirectly, in the conduct of Activision Blizzard's business affairs. Because of their senior positions, they knew the adverse non-public information about Activision Blizzard's misstatement of income and expenses and false financial statements.

62.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Activision Blizzard's financial condition and results of operations, and to correct promptly any public statements issued by Activision Blizzard which had become materially false or misleading.

63.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Activision Blizzard disseminated in the marketplace during the Class Period

18

concerning Activision Blizzard's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Activision Blizzard to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Activision Blizzard within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Activision Blizzard securities.

64.     Each of the Individual Defendants, therefore, acted as a controlling person of Activision Blizzard. By reason of their senior management positions and/or being directors of Activision Blizzard, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Activision Blizzard to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Activision Blizzard and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Activision Blizzard.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

DATED: March 6, 2019                    JOHNSON FISTEL, LLP


                              *s/ W. Scott Holleman*
                              W. SCOTT HOLLEMAN

                              GARAM CHOE
                              99 Madison Avenue, 5th Floor
                              New York, NY 10016
                              Telephone: 212-802-1486
                              Facsimile: 212-602-1592
                              ScottH@johnsonfistel.com
                              GaramC@johnsonfistel.com

                              JOHNSON FISTEL, LLP
                              MICHAEL FISTEL, JR.
                              40 Powder Springs Street
                              Marietta, GA 30064
                              Telephone: 470-632-6000
                              Facsimile: 770-200-3101
                              MichaelF@johnsonfistel.com

                              *Attorneys for Plaintiff*

DocuSign Envelope ID: ABEEA128-D5FE-4140-A814-B2CD41843A1A

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Benjamin Winckler declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.     I have reviewed the complaint with my counsel and authorize its filing.

2.     I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.     I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.     I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 8/8/2018 | 75 | 70.119 |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |

5.     I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6. I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of March 2019.

DocuSigned by:

*Benjamin Winckler*

4AD09523CE184C6...

Benjamin Winckler